Rudolph MOTTOLA

v.

Mark E. CIRELLO et al.

Frank St. Jean et al

v.

Deanna Chirico et al.

Nos. 2000-278-M.P., 2000-250-M.P. and 2000-251-M.P.

Supreme Court of Rhode Island.

Feb. 4, 2002.

William Filippo, Providence; Manuel A. Suarez, Wilton, CT; Robert M. Ferrieri; Paul A. Anderson; Providence; Christopher L. Russo, Cranston, for Plaintiff.

John F. Kelleher, Rebecca Tedford Partington, Amy Vignali Coleman, Kenneth P. Borden, Providence, for Defendant.

Present: WILLIAMS, C.J., LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

GOLDBERG, Justice.

This case came before the Supreme Court on December 12, 2001, on petitions for writ of certiorari by both parties to review *sua sponte* orders of the Superior Court. These orders directed defense counsel, in connection with the substitution of the state as the party defendant pursuant to G.L. 1956 § 9–31–12(b), to withdraw his appearance and further ordered the Attorney General to enter an appearance on behalf of the State of Rhode Island. We also granted certiorari on behalf of the plaintiff to review a *sua sponte* order that declared that plaintiff was no longer entitled to prejudgment interest on any damage award, and that the award was subject to the statutory cap on damages enjoyed by the state pursuant to § 9–31–1. We affirm in part and reverse in part.

### Facts and Travel

On June 18, 1997, Rudolph Mottolla (plaintiff or Mottolla) was operating a motor vehicle and, while stopped, was struck from behind by a vehicle operated by Mark E. Cirello (Cirello or employee), who, at the time of the collision, was employed by the State of Rhode Island (the state), a co-defendant in this case. The plaintiff filed a personal injury action on June 10, 1998, alleging negligence by both the employee and the state as *respondeat superior*. Prior to the collision, the state had entered into a contract of insurance with Royal Sun & Alliance Insurance Company (Royal or insurer) that provided for liability coverage for the state's fleet vehicles, including the vehicle involved in this collision. Included in the contract of insurance is a provision requiring the state to cooperate in the defense of any claims and accord the carrier discretion to investigate and settle claims as it sees fit.

The record discloses that when served with the complaint, the Attorney General forwarded the claim to Royal for defense and coverage. Royal proceeded to retain the firm of Higgins, Cavanagh & Cooney (Higgins or defense counsel) to answer and defend the suit. Higgins answered the complaint on behalf of both Cirello and the state and subsequently moved, pursuant to § 9–31–12(b), to dismiss the claim against Cirello and to substitute the state as the party defendant. The trial justice granted the motion, dismissed Mottola's claim

against the employee, and ordered the substitution of the state as the party defendant. However, she also declared *sua sponte,* that plaintiff was no longer entitled to statutory interest on any potential judgment and that the statutory cap on damages pursuant to § 9–31–1 applied to any judgment plaintiff may recover. Finally, the trial justice ordered that "the Attorney General * * *[shall] enter his appearance forthwith [and that] [c]ounsel for the defendant shall withdraw simultaneously." This Court granted certiorari in order to review these interlocutory rulings.

### Standard of Review

"Questions of * * * statutory interpretation are reviewed *de novo* by this Court." *Webster v. Perrotta,* 774 A.2d 68, 75 (R.I.2001) (citing *Rhode Island Depositors Economic Protection Corp. v. Bowen Court Associates,* 763 A.2d 1005, 1007 (R.I. 2001)). "In matters of statutory interpretation our ultimate goal is to give effect to the purpose of the act as intended by the Legislature." *Webster,* 774 A.2d at 75 (citing *Matter of Falstaff Brewing Corp. Re: Narragansett Brewery Fire,* 637 A.2d 1047, 1050 (R.I.1994)). Further, "when the language of a statute is clear and unambiguous, this Court must interpret the statute literally and must give the words of the statute their plain and ordinary meanings." *Accent Store Design, Inc. v. Marathon House, Inc.,* 674 A.2d 1223, 1226 (R.I.1996).

> "Of course, it is equally well established that, when confronted with statutory provisions that are unclear or ambiguous, this Court, as final arbiter of questions of statutory construction, will examine statutes in their entirety, and will 'glean the intent and purpose of the Legislature "from a consideration of the entire statute, keeping in mind [the] nature, object, language and arrangement" of the provisions to be construed.' *In re Advisory to the Governor,* 668 A.2d 1246, 1248 (R.I.1996) (quoting *Algiere v. Fox,* 122 R.I. 55, 58, 404 A.2d 72, 74 (1979)). This analysis, however, is unnecessary in the face of the unambiguous statutory language." *State v. DiCicco,* 707 A.2d 251, 253 n. 1 (R.I.1998).

### Motion to Dismiss

The trial justice, relying upon § 9–31–12(b), granted Cirello's motions to dismiss the claim against him and to substitute the state as the party defendant. Section 9–31–12 provides:

> "Indemnification—Reservation of obligation—Certification.—(a) The state reserves the right to determine whether or not it will indemnify any employees defended pursuant to §§ 9–31–8—9–31–11, if a judgment is rendered against the employee.
>
> "(b) Upon certification by the court in which the tort action against a state employee is pending that (1) the defendant employee was acting within the scope of his or her office or employment when the claim arose, and (2) the claim does not arise out of actual fraud, willful misconduct, or actual malice by the employee, any civil action or proceeding commenced upon the claim under this statute shall be deemed to be an action or proceeding brought against the state under the provisions of this title and all references thereto, and the state *shall be* substituted as the party defendant." (Emphasis added.)

The language of this statute is clear and unambiguous, and, upon certification of the predicate facts that the employee-tortfeasor was acting within the scope of his or her employment and that the claim is not fraudulent, malicious or the result of willful misconduct, the suit "shall be deemed to be an action or pro-

ceeding brought against the state." In accordance with our well established principle of statutory construction, the words of the statute shall be given their plain and ordinary meaning. *Accent Store Design, Inc.,* 674 A.2d at 1226. Therefore, once the state stipulated that Cirello was acting within the scope of his employment and that the suit was not improperly motivated, the court appropriately substituted the state as the party defendant. Although this section does not mandate that the action be dismissed against Cirello, a substitution effectively removes the employee from the case. Thus, we are satisfied that a dismissal of the claim against Cirello was appropriate in these circumstances. However, the statute does not address the questions of prejudgment interest or the applicability of a statutory cap on damages.

Finally, we conclude that the hearing justice had no authority to dictate who shall represent the state in this action or in any other litigation. Although we recognize that § 9–31–6 provides that in an action "against the state of Rhode Island, the [A]ttorney [G]eneral, or any assistant attorney general authorized by him or her, shall represent the state in the action[,]" we are not satisfied that this statute precludes the state from entering into a contract of insurance that includes a provision that the carrier will provide a defense to claims made pursuant to the policy.

**Defense Counsel**

The Attorney General of the State of Rhode Island holds a constitutional office with specific and significant responsibilities to the people of Rhode Island. Pursuant to article 9, section 12, of the Rhode Island Constitution, the duties and powers of the Attorney General remained the same under the Constitution as existed at the time the Constitution was adopted, "or as from time to time may be prescribed by law." This Court has held that the Attorney General is independent from other branches of government, including the judiciary. *In re House of Representatives (Special Prosecutor),* 575 A.2d 176, 179 (R.I.1990). Further, G.L. 1956 § 42–9–6 provides:

> "Except as otherwise in the general laws provided, the attorney general, *whenever requested,* shall act as the legal advisor of the individual legislators of the general assembly, of all state boards, divisions, departments, and commissions and the officers thereof, of all commissioners appointed by the general assembly, of all the general officers of the state, and of the director of administration, in all matters pertaining to their official duties, and shall institute and prosecute, whenever necessary, all suits and proceedings which they may be authorized to commence, and shall appear for and defend the above-named individual legislators, boards, divisions, departments, commissions, commissioners, and officers, in all suits and proceedings which may be brought against them in their official capacity." (Emphasis added.)

Moreover, with respect to tort claims made against a state employee, § 9–31–8 provides that "upon a *written request* of an employee or former employee of the state," the Attorney General shall defend any action brought pursuant to the provisions of chapter 31 of title 9. (Emphasis added.) This mandate is not, however, absolute. In § 9–31–9, the General Assembly has recognized that the Attorney General's participation in a case may create a conflict of interest, the employee may refuse to cooperate in his or her defense, or it may simply not be in the best interest of the state for the Attorney General to defend the action. In the event that the Attorney General, in the exclusive exercise of his or her statutory authority, deter-

mines that it is not in the best interest of the state or the employee to undertake the defense, § 9–31–11 requires that the state pay for reasonable counsel fees and that the Attorney General "shall consult in advance with the prospective counsel to establish the parameters within which the state will be liable for attorneys' fees[.]"

Here, there is no evidence that prior to when the motion for substitution was filed, Cirello never requested the Attorney General to provide a defense to this claim. Further, the Attorney General was not obligated to undertake the representation of the state as the substituted defendant until Cirello was dismissed from the claim.[1] Thus, pursuant to § 9–31–10, the mandate that the Attorney General shall "assume exclusive control over the representation of the employee or former state employee" arises only where there has been a written request from the employee, and only after the Attorney General has declined to exercise his or her exclusive right to require the state to engage independent counsel. In addition, G.L. 1956 § 28–39–13 and G.L. 1956 § 28–42–41 both authorize the Attorney General to delegate work to private counsel in tort actions. Accordingly, it was an abuse of discretion for the hearing justice to order the Attorney General to do anything in this case. It is not the province of this Court, or the Superior Court, to dictate how the Attorney General elects to carry out the statutory functions of his office. Therefore, the order of the trial justice directing the Attorney General to immediately enter his appearance in this case is vacated.[2] Moreover, in the context of this case, there is no authority for a justice of the Superior Court to direct defense counsel to withdraw his appearance. Thus, the order mandating that Higgins withdraw as counsel is likewise vacated.

### Prejudgment Interest and the Statutory Cap on Damages

Although the applicability of the statutory cap on damages provided for in

1. Although Higgins also represented the state on the issue of the state's vicarious liability as Cirello's employer, this relationship also arose out of contract with the insurer. Neither the wisdom of that contract nor its provisions were before the hearing justice. Moreover, the manner in which state officials seek to protect the state from adverse personal injury claims and any agreements made relative to a defense of those claims is not the role of the judiciary.

2. We disagree with the dissent's position that a *sua sponte* order, directing the Attorney General to enter his appearance in this case simply because the state was substituted as the party defendant, was appropriate and should be affirmed. The Attorney General was not provided with notice of the motion for substitution, nor was he afforded an opportunity to learn anything about the factual basis underlying this claim before he was ordered to enter his appearance. The fact remains that, although the state has been substituted as the party defendant, the state employee is the *tortfeasor,* the individual whose conduct is the subject matter of the claim. The state employee tortfeasor is unknown to the Attorney General and his or her presence in the suit as a cooperating witness may pose a significant conflict of interest for the Attorney General. For example, this collision may have resulted in criminal charges against this tortfeasor or the employee may have been previously prosecuted by the Attorney General. Further, there could be multiple joint tortfeasors, some of whom are already represented by the Attorney General. Thus, we are satisfied that the order directing the Attorney General to enter his appearance without proper notice, or an opportunity to review the factual circumstances of this negligence claim, was inappropriate and an abuse of discretion. Although we may hold differently in future cases, aided by an appropriate appellate record, we are not convinced that a *sua sponte* order issued in the absence of a record, or an opportunity to be heard, is the proper circumstance to address the significant question of the Attorney General's responsibilities upon the entry of an order substituting the state for the employee tortfeasor.

§ 9-31-2 and the availability of prejudgment interest in the context of this case are intriguing questions, these issues were not before the trial justice. We note that neither subsection (a) of § 9-31-12, providing for an indemnification of an employee-tortfeasor "if a judgment is rendered against the employee," nor subsection (b), permitting the substitution of the state under certain circumstances, addresses the question of the prejudgment interest or the cap on damages. Further, we are mindful that the prohibition against prejudgment interest is a matter of decisional law and not an act of the General Assembly and it is for this Court to address this issue when it is properly before us. *See Andrade v. State,* 448 A.2d 1293 (R.I.1982) (prejudgment interest unavailable in negligence action against the state). Nonetheless, as inviting as this intellectual exercise may be, these issues were not before the court and it was an abuse of discretion for the hearing justice to make such sweeping orders. Thus, the *sua sponte* orders relative to damages and the availability of prejudgment interest are vacated.

## Conclusion

For the foregoing reasons, we grant the petitions for certiorari in part and deny them in part. The order of the trial justice is affirmed in so far as it dismissed the claim against Cirello. The orders directing the Attorney General to enter his appearance, ordering defense counsel to withdraw its appearance, and the orders relative to the availability of prejudgment interest and the statutory cap on damages are quashed. The papers in this case are remanded to the Superior Court with our decision endorsed thereon.

FLANDERS, Justice, concurring in part and dissenting in part.

I concur with the Court's decision to grant certiorari and to quash those portions of the Superior Court's order in this case that (1) mandated the private law firm representing the state to withdraw its appearance; (2) declared that prejudgment interest would not be available with respect to any damages awarded; and (3) decided that the statutory cap on damages against the state would be applicable to any money judgment in this case. In my judgment, these rulings, even if they ultimately prove to be necessary, were premature.

But I disagree with the majority's decision to quash that portion of the Superior Court's order that required the Attorney General to enter his appearance on behalf of the state in this case. Under G.L. 1956 § 9-31-6, "[i]n any action pursuant to this chapter [namely, chapter 31, entitled 'Governmental Tort Liability'] against the state of Rhode Island, the attorney general, or any assistant attorney general authorized by him or her, *shall* represent the state in the action." (Emphasis added.)

Here, plaintiff named the State of Rhode Island as a party defendant in the action he filed pursuant to chapter 31 of title 9. Consequently, § 9-31-6 required the Attorney General, or any assistant attorney general he authorized (hereinafter referred to collectively as the AG), to represent the state in this action. Although a private insurance company retained a private law firm to represent the state in this lawsuit, that private law firm is not the AG. In fact, the AG had nothing to do with the retention of this particular law firm. Rather, it appears that the Department of Administration (DOA) entered into a contract with a private insurance company, Royal Son & Alliance Insurance Company (Royal), whereby it agreed to allow Royal to designate private defense counsel to represent the state in certain types of actions alleging governmental tort liability.

Moreover, according to the insurance contract, the DOA also agreed to waive the state's sovereign immunity for all claims up to $500,000, unless the state otherwise requested. Significantly, by statute the state has waived its sovereign immunity against tort claims only up to $100,000. *See* § 9–31–2.

Two questions immediately arise with respect to this contract:

(1) On what legal basis can the DOA (or any official therein) divest the AG of his statutory obligation to represent the state in any governmental tort liability action brought against it?

(2) Under what authority can the DOA (or any official therein) agree to waive the state's sovereign immunity up to $500,000 per claim when the Legislature, per § 9–31–2, has only agreed to a $100,000 waiver?

The answer, I submit, to both of these questions, is the same: no authority whatsoever exists. Consequently, the contract with Royal was *ultra vires* and illegal to the extent that it purported to relieve the AG of his responsibility to represent the state in governmental tort liability actions like this one and to divest him of his authority per § 9–31–6, "to compromise or settle any claim cognizable under this chapter." (The DOA's contract with Royal accorded this authority to the private insurance company.) Moreover, to the extent the insurance contract purported to waive the state's $100,000 cap on tort claim damages, it was also illegal and void because the DOA possessed no authority to waive the legal limit established by law for governmental tort claims against the state.

Contrary to the AG's arguments, I can find no authority whatsoever permitting him to delegate his responsibility to represent the state in these types of cases to private counsel retained by a private insurance company. The statutes he has cited to support such an authority to delegate (for example, G.L. 1956 § 28–39–13 and G.L. 1956 § 28–42–41) simply are inapplicable to this type of lawsuit. *See infra.*

The single issue presented to the motion justice for her decision was whether to substitute the state for the state-employee defendant pursuant to § 9–31–12(b). The private law firm filed a motion on behalf of both defendants requesting the court to do so. Section 9–31–12(b) provides:

> "Upon certification by the court in which the tort action against a state employee is pending that (1) the defendant employee was acting within the scope of his or her office or employment when the claim arose, and (2) the claim does not arise out of actual fraud, willful misconduct, or actual malice by the employee, any civil action or proceeding commenced upon the claim under this statute *shall be deemed to be an action or proceeding brought against the state* under the provisions of this title and all references thereto, and the state shall be substituted as the party defendant." (Emphasis added.)

In passing on this request, the motion justice made the appropriate factual determination that the employee defendant was acting within the scope of his state employment, and that his conduct was not fraudulent, willful, or malicious. Pursuant to the statute, she therefore granted the motion, substituted the state for the employee defendant, and dismissed the state employee from the case. But this substitution transformed the case from one involving a state employee as a defendant into a suit solely against the state. Once the court ordered the state substituted for the employee as a party defendant, the sections of the Government Tort Liability Act pertaining to indemnification and representation of employees by the state (§§ 9–31–8 through 9–31–12(a)) became irrelevant because the

employee was no longer a party to the case.

Section 9–31–6 provides as follows:

"*In any action pursuant to this chapter against the state of Rhode Island, the attorney general, or any assistant attorney general authorized by him or her, shall represent the state in the action.* The attorney general is authorized to compromise or settle any claim cognizable under this chapter after the institution of suit thereon, with the approval of the court in which the suit is pending." (Emphasis added.)

Indeed, because plaintiff had named the state as a party defendant in the suit, § 9–31–6 was already applicable to this case even before the motion justice ordered substitution of the state for the employee defendant. Thus, § 9–31–6 required the AG to represent the state in any action brought against it under the Governmental Tort Liability Act. The motion justice was correct, therefore, in requiring the AG to enter an appearance in this action as a condition of granting the requested substitution. Indeed, regardless of whether plaintiff had included the employee defendant as a party, the AG had an independent duty to enter an appearance for and to represent the state in this case. In any event, substitution of the state under § 9–31–12(b) should not occur without the AG entering an appearance and representing the state as required by § 9–31–6.

At oral argument, an attorney from the AG's office suggested that if § 9–31–6 mandated the AG's appearance in this case, then he could delegate that responsibility to private counsel. As support for this position, the AG's appellate counsel referred the Court to §§ 28–39–13 and 28–42–41. But these statutes allow for special counsel to represent the director and board of review for the Department of Employment and Training—who are not even named as defendants in this case. Even then, special counsel can represent these government defendants *only* in temporary—disability-insurance actions brought under chapters 39 through 41 and chapters 42 through 44 of title 28, and *only* when designated by the director of the Department of Employment and Training with the approval of the Governor. Manifestly, this is not such an action. Indeed, the fact that, in certain circumstances, the General Assembly has explicitly provided elsewhere in the General Laws for special counsel in lieu of the AG to represent other state governmental defendants bolsters the conclusion that title 9, which contains no such provision, does not authorize any such arrangement when the state is a party to the suit. Moreover, §§ 28–39–13 and 28–42–41 show that the General Assembly is well aware of how to authorize special counsel to represent state government entities in lieu of the AG when it wishes them to do so. Because no such authorization exists when the state is a party to a suit under the Governmental Tort Liability Act, however, this Court should conclude that the Legislature never intended to allow such an arrangement, especially when the state's vital interest in protecting itself against large money damage awards is at stake.

It is true that there is a provision in title 9 (§ 9–31–11) allowing legal representation of state employees by attorneys other than the AG under certain limited circumstances. This provision, however, is not applicable to this case. Section 9–31–8 provides that, "upon a written request of an employee or former employee," the AG shall defend the employee for acts that were performed within the scope of his or her employment. If, however, the AG believes that defending such an employee would create a conflict of interest between the state and the employee, or that "it is

not in the best interest of the state or the state employee or former state employee to represent him or her," § 9–31–11, then the AG may decline his statutory obligation to defend the employee, and the procedure for doing so is specifically provided for in § 9–31–11. Here, however, the record contains no indication that the defendant employee ever requested the AG to represent him. Nor is there any evidence of any alleged conflict of interest that would have prevented the AG from representing either the employee or the state. Likewise, the record is barren of any determination by the AG that it was "not in the best interest of the state" for the AG to represent any defendant in this case. Finally, there was no showing of any compliance with the § 9–31–11 procedure for the AG to "consult in advance with the prospective counsel to establish the parameters within which the state shall be liable for attorneys' fees." Indeed, all of these provisions simply were inapplicable to this case because they do not apply once the state is the only defendant left in the case.

But the critical point is that there is no § 9–31–11 authority for the AG to bow out of representing the state when, as here, the state is sued *eo nomine* or when it is substituted for an employee as a party defendant. In other cases that touch upon the delegation of executive power, the members of this Court have opined that there must be a clear and specific statutory provision which authorizes such a delegation. *See In re Advisory Opinion to the Governor (Rhode Island Airport Corporation)*, 627 A.2d 1246, 1250–52 (R.I.1993); *In re House of Representatives (Special Prosecutor)*, 575 A.2d 176, 179–80 (R.I. 1990). In sum, the plain language of § 9–31–6 provides that when the state is a defendant in a tort-claim action, the state, exclusively through the AG, must control the litigation and represent the state.

Nothing in title 9, however, prohibits the AG from obtaining the *assistance* of private counsel in representing the state under § 9–31–6. Indeed, the AG could even (subject to personnel limitations contained in G.L. 1956 chapter 9 of title 42) designate private counsel as special assistant attorneys general under §§ 42–9–2(a) and 42–9–8. What the AG may not do, however, is abdicate his ultimate responsibility and authority to control the litigation by refusing to represent the state in an action filed against it under the Governmental Tort Liability Act. Allowing private counsel to represent the state under these circumstances—whether through an insurance contract or otherwise—constitutes an abdication of the statutorily mandated duties of the AG, and this Court should not condone it.[3]

## Conclusion

Section 9–31–6 is clear. In any suit brought against the State of Rhode Island under the Governmental Tort Liability Act, the AG *must* represent the state. The plaintiff named the state as an original party in this suit, and therefore the AG should have entered an appearance on behalf of the state after receiving service of process on its behalf, instead of allowing a private law firm hired by the insurance company to represent the state. Moreover, under § 9–31–12, once the court substituted the state for the employee defendant, the only defendant party left in the case was the state—a situation that once

3. The AG is a constitutional officer. Article 9, section 2 of the Rhode Island Constitution specifically states that the AG's duties and responsibilities include those prescribed by statute. Therefore, the AG's refusal to carry out a statutory obligation also violates the State Constitution.

again required the AG to represent the state under § 9-31-6. Thus, the motion justice was absolutely correct in ordering the AG to enter his appearance in this case and to comply with his statutory obligation to represent the state. She should not, however, have ordered the withdrawal of private counsel at the same time. So long as the AG represented the state and retained exclusive control of the litigation, no law precluded the AG from engaging or working with private counsel to assist with his representation of the state.[4] Therefore, I would deny certiorari and affirm the motion justice's order requiring the AG to enter an appearance in this case, but I would grant certiorari and quash that portion of the order, *inter* alia, requiring private counsel to withdraw. Although ultimately such an order may prove necessary, I believe it was premature for the motion justice to mandate such a withdrawal at this time. Nevertheless, the Superior Court should not allow private counsel to control or subvert the AG's representation of the state in this case.

4. The AG has argued that requiring him to represent the state would be a violation of the insurance contract that the DOA has signed with Royal. But no insurance policy or other contract, entered into by another executive department, or officer thereof, may vary or moot a duly enacted statute requiring the AG to represent the state in this type of action.