DECISION
This cause is before the Court for decision in connection with Defendants' Renewed Motion to Bar the Payment of Contingent Fees on the State's Public Nuisance Claim.
On or about September 3, 2002, immediately prior to the start of the first trial in Phase 1 so-called of the captioned case[1], Defendants moved to bar the payment of contingent fees to the State's outside counsel. The thrust of that Motion, which was denied by this Court in a Bench Decision, was that it is contrary to public policy to compensate private counsel representing a governmental entity on a contingent fee basis in connection with a public nuisance claim. While Defendants in so moving relied on case law from California, this Court held that:
 "to preclude this type of fee arrangement would be unnecessarily to tie the hands of the Attorney General in the proper performance of his duties, because it's clear to this Court that the costs of this litigation extend[s] into the millions and perhaps the multi-millions of dollars, just the costs of litigation. It would be preclusive for any Attorney General to undertake this type of a litigation predicated either on his own budget or even with special appropriations from the General Assembly."
Specifically, the Court declined, at that time, to follow the pronouncements of the California courts' decisions relied upon by Defendants. Recently, Defendants have filed what they have termed a Renewed Motion seeking the same result. Since this Court's Bench Decision on September 3, 2002, Defendants have obtained additional evidence that was not available to them and which they did not and could not present to this Court in connection with their original motion. That is to say, Defendants, in January 2003, procured under our Access to Public Records Act a copy of the original Retainer Agreement between the State of Rhode Island acting by and through its Attorney General on the one hand and the law firms of Ness, Motley, Hoadholt, Richardson, Poole (now Motley Rice, LLP) and Decof Grimm (now Decof Decof,) hereinafter the "Contingent Fee Counsel." This new evidence, Defendants claim, shows that the agreement between the Attorney General and the Contingent Fee Counsel ". . . violated public policy in a fundamental way not addressed by (the) prior motion: it delegates complete control of this litigation to the Contingent Fee Counsel, effectively making the Attorney General . . . powerless to control them."
The Court notes that the particular provisions of the Retainer Agreement which was dated October 8, 1999, immediately prior to the filing of this law suit, relied on by Defendants as the basis for their claim of an unconstitutional relinquishment of power over and control of this litigation by the Attorney General to Contingent Fee Counsel is found in paragraphs 1 and 2 of the Retainer Agreement which read as follows:
 "1. The Law Firms will diligently and forcefully prosecute all claims which, in their judgment, should be asserted against any and all persons, firms or corporations for damages arising out of or referable to the manufacture, sale, distribution or use of lead paint.
 2. The Attorney General shall have the right to designate from either of the Law Firms chief counsel, with full authority and responsibility for all case management, trial strategy and other decisions necessary or incident to the necessary prosecution of the claims."
Defendants claim that the vice which apparently motivated the California courts to proscribe contingent fee arrangements in public nuisance matters in that jurisdiction as contrary to its public policy is and should be exacerbated here by what Defendants tell us constitutes the relinquishment, indeed, the abdication by the Attorney General of his constitutional rights and obligations under the language he agreed to in the Retainer Agreement as quoted above.
The State argues, inter alia, that 1) general rules of contractual construction when taken in juxtaposition to the ethical rules which regulate conduct by attorneys, 2) the active role in the instant case of the Attorney General's Office which, inter alia, has included the signing of the complaint, the presence at each and every conference and hearing in connection with this law suit since its inception by representatives of the Attorney General's Office and, indeed, frequently of the Attorney General himself, 3) the active role of the Attorney General and/or his staff throughout the extensive motion practice as well as 4) the trial participation of one or more of the Attorney General's staff all clearly demonstrate that there has been no abdication of responsibility and no ceding of authority by the Attorney General and/or his office in connection with this matter. The argument of the State goes on to suggest that under all of the attendant circumstances there has been no showing by the Defendants which should result in any different ruling in connection with the instant motion from that which pertained in September 2002 as hereinbefore set forth.
This Court respectfully disagrees with some of the State's contentions. Mindful, as the Court is, of the very active role played by the Attorney General's office from the inception of the case to now, a plain reading of the direct language of the paragraphs referred to above inescapably leads this Court to conclude that the Retainer Agreement vests total decision making authority in Contingent Fee Counsel as to who the Defendants should be, and as to what causes of action should be brought. The Attorney General's specifically articulated right to designate chief counsel from one of the outside law firms does not detract from that conclusion. The Attorney General's implied right to terminate Contingent Fee Counsel which, if paragraph 5 of the Retainer Agreement can be read to afford such right to the Attorney General, carries with it a monetary cost such that it represents form rather than substance. Put another way, the quantum meruit provision, is such that pragmatically the cost of exercising the provisions of paragraph 5 would be totally prohibitive.
This Court has no trouble in concluding that as a constitutional officer of this State and in exercising powers which predate the Constitution (see the Court's decision of April 5, 2001, Decision, page 5) the Attorney General cannot totally cede to Contingent Fee Counsel the powers of his office as he does in the manner set forth in paragraph 1 of the Retainer Agreement as quoted above.
The Attorney General calls this Court's attention to a recent Opinion of our Supreme Court wherein it was stated:
 "The Attorney General of the state of Rhode Island holds a constitutional office with specific and significant responsibilities to the people of Rhode Island. Pursuant to article 9, section 12 of the Rhode Island Constitution, the duties and powers of the Attorney General remained the same under the Constitution as existed at the time the Constitution was adopted `or as from time to time may be prescribed by law.' This Court has held that the Attorney General is independent from other branches of government, including the judiciary. . . .
 It is not the province of this Court, or the Superior Court, to dictate how the Attorney General elects to carry out the statutory functions of his office." Mottola v. Cirello, 789 A.2d 421, 425 (R.I. 2002).
Fully mindful of the admonition of our highest court, this Court will not attempt to dictate how the Attorney General carries out his duty. What this Court will do is, through this decision, conditionally grant the motion of Defendants.
As to that motion, the Court notes that Defendants have couched it in terms of a Renewed Motion to Bar the Payment of Contingent Fees on the State's Public Nuisance Claim. This Court already has determined that nothing in the jurisprudence of this jurisdiction precludes that method of compensation in matters of this nature.
This Court believes, however, that the basis of Defendants Renewed Motion presents a separate and distinct issue from the fee issue and that issue is as discussed and resolved above.
What then is the conditional nature of the order to be entered herein?
Defendants' motion shall be granted unless, within two weeks of the date hereof, Plaintiff provides to this Court and to counsel for the Defendants a copy of an amendment to the Retainer Agreement containing a provision or provisions which cure what this Court has found in this Decision to be a wrongful ceding of power/authority by the Attorney General to Contingent Fee Counsel. Such amendment may, in the discretion of the parties to the Retainer Agreement be on a nunc pro tunc basis to the date of the execution of the Retainer Agreement provided that the Attorney General[2] execute a statement to the effect that by signing the original complaint herein the Attorney General made the ultimate determination as to who the Defendants should be and as to the causes of action to be asserted against them.
Counsel shall prepare an Order for entry.
[1] That trial ended with a mistrial when the jurors were unable to reach a unanimous agreement with respect to the question posed to them at the conclusion of the trial.
[2] The Court is, of course, aware that the incumbent Attorney General was not in office at the time of the execution of the Retainer Agreement. This provision will be satisfied by a statement executed either by the incumbent, or by his predecessor.