## PAWTUCKET SCHOOL COMMITTEE, et al.

v.

## PAWTUCKET TEACHERS ALLIANCE, et al.

### No. 91–404–Appeal.

Supreme Court of Rhode Island.

July 15, 1992.

Stephen Robinson, Asquith, Merolla, Anderson, Archetto & Kane, Providence, for plaintiffs.

Richard A. Skolnik, Temkin, Lipsey & Skolnik, Ltd., Providence, for defendants.

## OPINION

SHEA, Justice.

This matter comes before the Supreme Court on appeal by the defendants, the Pawtucket Teachers Alliance (union) and Mary Ann Kaveny in her capacity as president of the union (Kaveny), from a judgment entered in the Superior Court in favor of the plaintiffs, the Pawtucket School Committee (school committee), Richard Carlton in his capacity as superintendent of the city of Pawtucket schools (Carlton), and Robert and Carole Ann Young (the Youngs) on behalf of their minor child. We affirm the judgment of the trial court.

The following facts are not disputed. The Youngs' daughter received a failing first-quarter grade in her biology class at Tolman High School in Pawtucket, Rhode Island (Tolman). The Youngs appealed the grade to the school principal, without success. They next appealed to Carlton, the superintendent of schools, again without success. The Youngs then appealed to the school committee.

On April 9, 1990, the school committee conducted a full hearing. The Youngs, their daughter, the biology teacher, the principal, and Kaveny were present at the hearing. Following the hearing the school committee voted to change the student's grade from a 68 to a 70 percent.

The union did not file an appeal from the school committee's decision with the commissioner of elementary and secondary education as provided by G.L.1956 (1988 Reenactment) § 16–39–2. Instead, it filed a grievance and sought to have the matter heard before an arbitrator pursuant to the provisions of the then-existing collective-bargaining agreement.

On February 20, 1991, the school committee, Carlton, and the Youngs filed a declaratory-judgment action in the Superior Court. They requested that a trial justice declare that the issue regarding a student's grade is not arbitrable. On June 4, 1991, a justice of the Superior Court conducted a hearing on the school committee's motion for summary judgment. Following the hearing, the trial justice issued a decision from the bench, granting the school committee's motion. A judgment was entered on June 11, 1991. The union has filed a timely appeal.

The only issue before us is whether the trial justice erred when he concluded that the issue of the school committee's decision to change the student's grade is not arbitrable under the collective-bargaining agreement but, rather, is a matter subject to an appeal to the commissioner of elementary and secondary education under § 16–39–2.

■ The law concerning a motion for summary judgment is well settled. If there are no material facts in dispute, then the matter is ripe for summary judgment. *Golderese v. Suburban Land Co.*, 590 A.2d 395, 396 (R.I.1991). Here, the arguments that the union has presented relate solely to a question of law. Therefore, our review is limited to determining whether the trial justice applied the proper law to the undisputed facts.

Article 12, section 1, of the Rhode Island Constitution establishes within the General Assembly the power to "promote public schools and public libraries, and to adopt all means which it may deem necessary and proper to secure to the people the advantages and opportunities of education and public library services." Section 4 of article 12, provides in part that "[t]he general assembly shall make all necessary provisions by law for carrying this article into effect." The General Assembly, through its plenary powers, has in turn delegated through G.L.1956 (1988 Reenactment) § 16–1–5 certain duties to the commissioner of elementary and secondary education (commissioner). One such duty is to "interpret school law and to decide such controversies as may be appealed to the commissioner from decisions of local school committees." Section 16–1–5(j). Stated differently, § 16–1–5(j) provides the commissioner with the power to hear appeals from local school committee decisions. The statutory right to appeal a school committee decision to the commissioner was created by § 16–39–2.

■ The language of § 16–39–2 is as follows:

"Any person aggrieved by any decision or doings of any school committee or in any other matter arising under any law relating to schools or education may appeal to the commissioner of elementary and secondary education who, after notice to the parties interested of the time and place of hearing, shall examine and decide the same without cost to the parties involved."

A review of the more recent volumes of the Rhode Island commissioner of education decisions reveals that the commis-

sioner hears disputes concerning student grades. *See Feit v. Providence School Board,* February 25, 1992; *Paul R. Michaud v. Middletown School Committee,* October 12, 1990; *Doe v. Tiverton School Committee,* June 27, 1989. Because § 16–39–2 is not expressly exempted by G.L.1956 (1988 Reenactment) § 42–35–18(b), the procedural rules for administrative hearings set forth in §§ 42–35–9 through 42–35–13 of the Administrative Procedures Act apply to hearings conducted by the commissioner.

Here, the school committee conducted a hearing on the issue of whether the student's grade should be changed. Following that hearing the school committee members voted to change the student's grade from a 68 to a 70 percent. Applying § 16–39–2 and § 16–1–5(j) to the facts, we conclude that if the teacher was aggrieved [1] by the school committee's decision, he could have filed an appeal to the commissioner, who has the power to conduct a hearing and decide the issue.

In pursuance of the duty article 12, section 1, imposed upon it, the General Assembly has provided "certified public school teachers" with the "right to organize, to be represented, to negotiate professionally and to bargain on a collective basis with school committees covering hours, salary, working conditions and other terms of professional employment." G.L.1956 (1986 Reenactment) § 28–9.3–1. Clearly the Legislature intended this statutory right of collective bargaining to be limited to terms of employment.

The union attempts to portray this case as a labor matter by arguing that the school committee's decision to change the student's grade places in issue the professional competency and conduct of the teacher. It asserts that if a teacher has an obligation to grade students and the school committee concludes that the teacher's grading was wrong, then the teacher must have a forum in which to have the conduct reviewed in an impartial manner. According-

ing to the union such a situation must be dealt with through the grievance and arbitration procedure set forth in the collective-bargaining agreement rather than by means of an appeal to the commissioner pursuant to § 16–39–2.

The union's efforts to portray this case as a labor matter are misplaced. This controversy involves the proper procedure for appealing the school committee's decision to change a student's grade. The question is, who has the power to change the student's grade once the school committee has rendered its decision? Clearly § 16–39–2 gives that power solely to the commissioner. The union's efforts to bring this matter in under the grievance and arbitration provision of the collective-bargaining agreement by portraying it as a labor matter fail to recognize the reality that the arbitrator lacks statutory authority to change the grade. We would also, point out at this juncture that under the collective-bargaining agreement arbitration process, the student would have no standing to participate, since he is not a party. To arbitrate this controversy would be unconscionable, since the student has the most significant interest in the grade.

Arguing that the collective-bargaining agreement empowers an arbitrator to change the grade in spite of § 16–39–2 flies in the face of longstanding case law. Over a century ago this court held that a contract entered into in contravention of a state statute was illegal and no contract rights were created. *Birkett v. Chatterton,* 13 R.I. 299, 302 (1881). More recently this court held that a settlement agreement in an age-discrimination law suit was unenforceable because it was in direct conflict with the Providence Retirement Act that mandated retirement for particular police and fire personnel at age sixty. *Power v. City of Providence,* 582 A.2d 895, 900 (R.I. 1990). In *Vose v. Rhode Island Brotherhood of Correctional Officers,* 587 A.2d 913 (R.I.1991), we applied the same reasoning to the question of whether a collective-bargaining agreement could strip the di-

---

**1.** We do not reach in this opinion the question of whether the teacher was in fact aggrieved within the meaning of G.L.1956 (1988 Reenactment) § 16–39–2.

rector of the Rhode Island Department of Corrections of certain powers delegated to him by the Legislature through G.L.1956 (1988 Reenactment) § 42–56–10. 587 A.2d at 913–15. We concluded it could not. *Id.* at 916.

The rights that purportedly inure to the teacher under the grievance and arbitration provision of the collective-bargaining agreement are contract-based rights. By contrast the right to appeal to the commissioner from a decision of the school committee arises from a statute, specifically § 16–39–2. The union's claim of right under the collective-bargaining agreement to seek, by arbitration, relief from the school committee's decision to change the student's grade directly conflicts with a statutorily created right. Under § 16–39–2 the commissioner, not an arbitrator, has the power to provide relief from the school committee's decision to change the student's grade.

For all these reasons the union's appeal is denied and dismissed, the judgment appealed from is affirmed, and the papers of the case are remanded to the Superior Court.