**Supreme Court**

No. 2014-15-Appeal.
(PM 12-4837)

City of Cranston             :

         v.                  :

International Brotherhood of Police      :
     Officers, Local 301.

NOTICE:   This opinion is subject to formal revision before publication in the Rhode Island Reporter.  Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

City of Cranston                    :

                    v.              :

International Brotherhood of Police  :
    Officers, Local 301.


Present:  Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.


**O P I N I O N**

**Justice Goldberg, for the Court.**  This case came before the Supreme Court on April 29, 2015, on appeal by International Brotherhood of Police Officers, Local 301 (union), from a Superior Court order granting the City of Cranston's (city) motion to vacate an arbitration award in the union's favor.  The union asserts that the Superior Court justice erred in vacating the award and that the judgment should be vacated and the arbitration award confirmed.  For the following reasons, we affirm the judgment of the Superior Court.

**Facts and Travel**

The material facts in this case are not in dispute.  On August 20, 1990, Officer Tori-Lynn Heaton (Officer Heaton) was hired as a civilian dispatcher for the city.  On June 6, 1994, Officer Heaton became a police officer.  In 1995, approximately one year after she was hired as a police officer, Officer Heaton opted out of the city's pension system and into the State of Rhode Island's pension system—the Municipal Employee Retirement System (MERS). The parameters and specifics relating to MERS were codified by the Rhode Island General Assembly in G.L. 1956 title 45.

In 2009, Officer Heaton contacted the city, contending that she was eligible to retire on February 21, 2010, in accordance with the "round-up rule" in section 24.4 of the collective bargaining agreement (CBA).[1] The so called round-up rule allowed for "[a]ny year in which a[n officer] completes over six (6) months of service [to] be credited with a complete year of credited service." Id. Accordingly, for pension purposes, this rule would allow an officer to retire with a full twenty years of service credit with only nineteen years, six months, and one day of service. On June 11, 2009, the Employees' Retirement System of Rhode Island (ERSRI) advised the city that, under G.L. 1956 § 45-21.2-5(8),[2] Officer Heaton was not entitled to credit for twenty years of service after completing only nineteen years, six months, and one day of service.[3] The city subsequently notified the union that Officer Heaton was not eligible to retire and receive her full twenty-year pension benefit pursuant to the round-up rule.

On September 9, 2009, Officer Heaton filed a grievance with the city seeking "[t]o be made whole in every way, but not limited to; being allowed to retire from the Cranston Police Department at 19 years, 6 months, plus one day * * * with [her] full 20 year pension * * *." Officer Heaton alleged that she was entitled to the credit in accordance with the round-up rule, as specified in the CBA and a memorandum of agreement (MOA) dated July 26, 2000, and entered into between the city and the union. The city denied the grievance on the basis that ERSRI "is

---

[1] Officer Heaton was the first officer who opted into MERS and sought to take advantage of the round-up rule.

[2] General Laws 1956 § 45-21.2-5(8), as amended by P.L. 2007, ch. 482, § 2 states the following:
   "Any member of the Cranston police department hired after July 1, 1995, or any member of the Cranston police department with five (5) years or less of service effective July 1, 1995, may retire pursuant to this subdivision upon written application to the board * * * provided, that the member at the specified time for retirement has earned a service retirement allowance of fifty percent (50%) of final compensation for at least twenty (20) years service * * *."

[3] ERSRI administers municipal pensions under MERS.

governed by [t]itles 36 and 45 of the Rhode Island General Laws * * *, and, as such, supersede[s] any local ordinances and/or memorandums." Specifically, § 45-21.2-22(1)—which governs the years of service necessary to retire under MERS—states that "[a]ny member may retire pursuant to this section upon his or her written application to the board stating * * * [he or she] has completed at least twenty (20) years of total service * * *." The city determined that, according to state law, Officer Heaton must complete the full twenty years of service to be eligible for her pension.

Although she pursued her grievance all the way to arbitration, Officer Heaton nonetheless elected to serve the full twenty years rather than risk any adverse consequences to her pension. As a result, she deferred her retirement until August 20, 2010. At the arbitration hearing, the issue in dispute was framed as follows: "Did the City violate the [CBA] when it refused to credit [Officer] Heaton with a year of service for pension purposes, notwithstanding that she had not completed a full year of service for the period immediately preceding the requested retirement?"[4] The union asserted that the contractual agreement between the parties was clear and unambiguous and that the benefits in the city's pension system—which included the round-up rule—had been promised to the employees who opted into the state's pension system (MERS), and were promised again in subsequent agreements. The union pointed to three sources that purportedly transferred the city's pension benefit plan to MERS, while specifically preserving

---

[4] At oral argument, the parties were at a loss as to explain whether a remedy had been requested, and if not, why not.

the round-up rule:  the CBA,[5] the MOA,[6] and a Cranston City Ordinance.[7]  In response, the city

asserted that the "failure to include [the round-up] rule in the special [s]tate statute[[8]] authorizing

the City to participate in MERS is fatal to the Union's case" because, according to the city, "[i]n

the absence of such a rule in the special legislation, the remaining provisions of the [s]tate

---

[5] The relevant portion of section 24.4 of the CBA states:  "Vested members shall in both plans earn a pension payment of two and one-half (2 1/2) percent per year of service * * *.  [Round-up Rule:] Any year in which a member completes over six (6) months of service will be credited with a complete year of credited service."

[6] The pertinent language in the 2000 MOA states the following:  "the parties agree that the language contained in Section 24 of the expired [CBA] covering fiscal years 1994-1997, read in conjunction with the statutory and ordinance changes, comprise the total agreement of the parties regarding retirement benefits presently enjoyed by members * * *."

[7] The relevant portion of the Cranston City Ordinance, § 24-23 states:
    "Any officer or member of the permanent police department who has been in active service * * * may retire pursuant to this section upon his or her written application to either the Cranston City Council if said member is a member of the Police Pension Fund of the City of Cranston * * * or to the State of Rhode Island Retirement Board if said member is a member of the State of Rhode Island's Optional Twenty (20) Year On Service Allowance R.I.G.L. 45-21.2-22, as modified, and hereafter defined in section B and C.
        " * * *
        "B. * * * 2. * * * c. Officers or members enrolled in the State of Rhode Island Pension plan will accrue two and one-half (2½%) percent per credited year of service up to a maximum of seventy-five (75%) percent pension payment for thirty (30) credited years of service. [Round-up Rule:] A credited year of service will be any year of service with over six (6) months completed."
The ordinance was enacted in 1996.

[8] The City of Cranston employees' pension rights under MERS are governed by title 45 of the General Laws.  Specifically, § 45-21.2-5(8) states:
        "Any member of the Cranston police department hired after July 1, 1995, or any member of the Cranston police department with five (5) years or less of service effective July 1, 1995, may retire pursuant to this subdivision upon written application to the board * * * provided, that the member at the specified time for retirement has earned a service retirement allowance of fifty percent (50%) of final compensation for at least twenty (20) years service * * *."
This provision was enacted in 1996. P.L. 1996, ch. 374, § 1.  Also, § 45-21.2-22(1) states that "[a]ny member may retire pursuant to this section upon his or her written application to the board stating * * * [he or she] has completed at least twenty (20) years of total service * * *."

- 4 -

statutes remain applicable" and those provisions clearly and explicitly provide that "eligibility for a state- administered pension under MERS requires a full 20 years of service." Therefore, the city asserted that it was correct in notifying Officer Heaton that she was not eligible to retire and qualify for a pension with less than twenty years of service.

The arbitrator issued a written decision. First, he conducted a contractual analysis into whether the city had violated the CBA when it concluded that Officer Heaton could not reap the benefit of the round-up rule and receive her pension after completing nineteen years, six months, and one day of service. The arbitrator determined that, when the union and the city reached their agreement to transition employees into MERS, "they explicitly agreed that the pension rights of unit members would have three sources[,]" the CBA, city ordinances, and state statutes. Therefore, the arbitrator found that, "[e]ven though the [round-up rule] benefit was omitted from the [statute], the City remains contractually obligated to provide that benefit to unit members," pursuant to the CBA, "as well as the broad language of the [MOA]," which the arbitrator declared was incorporated by reference into the CBA.

Next, the arbitrator conducted a statutory analysis. The arbitrator noted that, although it was with "trepidation" that he "enter[ed] the world of statutory interpretation[,]" he nonetheless proceeded to conduct his own analysis into whether the contractual obligations of the city violated any state law. According to the arbitrator, because the round-up rule "may be provided by ERSRI via special legislation, there appears to be no reason why it may not be provided by a municipality, such as [the city], on the basis of an independent contractual commitment." The arbitrator determined that

"[t]he City's arrangements with ERSRI are based upon the Cranston special legislation, rather than a private contract. However, due to the omission of one of the agreed-upon benefits from the legislation (the 'round-up' rule), the City stands as a self-insurer as to that benefit."

The arbitrator declared that the city "must either provide the benefit, on its own, or, it may endeavor to secure an amendment of the special legislation to include that benefit." The arbitrator concluded that the round-up rule did not directly conflict with § 45-21.2-22—which allows for retirement only after a member "has completed at least twenty (20) years of total service"—because he was "unable to see how any state pension statute is violated by requiring the City to honor this portion of its agreement with the Union," concluding, therefore, that the city "violated the 'round-up' rule of the contract when it declined to credit [Officer Heaton] with a full additional year of service on or about February 21, 2010 * * *."

The arbitrator also declared that there was no remedy available to the grievant because she in fact completed a full twenty years of service before she retired. He noted that, because Officer Heaton was not "certain of the outcome of her grievance * * * [and] work[ed] the extra six months or so[,] * * * she will have to be content with knowing that 'she was right' and/or that she made it easier for the next generation of similarly-situated employees to retire under the 'round-up' rule." Specifically, the arbitrator stated that Officer Heaton "will have to be content with the 'declaration of rights' provided in the foregoing portions of this opinion." In essence, because there never was a remedy available to the grievant in this case, the arbitrator transmuted the arbitration award into a declaratory judgment.

On September 18, 2012, the city filed a motion to vacate the arbitration award in Superior Court, asserting that the arbitrator had exceeded his authority. On February 14, 2013, the union

responded and objected to the city's motion.[9]  After a hearing before the Superior Court, the trial justice, in a written decision, concluded that the award was irrational and that the arbitrator exceeded his authority when he fashioned an award on a dispute that was not arbitrable. Accordingly, the trial justice granted the city's motion to vacate.  The union appeals.

**Issues on Appeal**

Before this Court, the union assigns error to the trial justice's conclusion on the following grounds:  (1) the trial justice erred because there is no direct conflict between the MERS statute and the city's CBA; (2) the trial justice improperly substituted his judgment for that of the arbitrator; and (3) the trial justice misinterpreted the remedy given in the arbitration decision.  In response, the city contends that the trial justice did not err and that his decision must be affirmed because:  (1) the arbitrator exceeded his authority in deciding an issue not submitted to him; (2) the arbitrator exceeded his authority by "effectively adding terms to the parties' CBA to remedy the issue that he improperly decided"; and (3) the arbitrator rendered an illegal award.

**Standard of Review**

"Generally, '[a]bsent a manifest disregard of a contractual provision or a completely irrational result,' the award of an arbitrator will be upheld." State (Department of Administration) v. Rhode Island Council 94, A.F.S.C.M.E., AFL-CIO, Local 2409, 925 A.2d 939, 944 (R.I. 2007) (quoting Providence Teachers Union v. Providence School Board, 725 A.2d 282, 283 (R.I. 1999)).  "Otherwise, '[t]he court has no authority to vacate the arbitrator's award absent a manifest disregard of a contractual provision, a completely irrational result, a decision that is contrary to public policy, or an award that determined a matter that was not arbitrable in

---

[9] In the union's memorandum in support of its objection to the city's motion to vacate, the union asked the court, in the last sentence of the memorandum, to uphold and confirm the arbitration award; however, the union did not file a motion to confirm the arbitration award.

the first place.'" State Department of Corrections v. Rhode Island Brotherhood of Correctional Officers, 64 A.3d 734, 739 (R.I. 2013) (quoting Cumberland Teachers Association v. Cumberland School Committee, 45 A.3d 1188, 1192 (R.I. 2012)).

This Court has stated that "[o]ne sure way for an arbitrator to exceed his or her powers is to arbitrate a dispute that is not arbitrable in the first place." State v. Rhode Island Alliance of Social Services Employees, Local 580, SEIU, 747 A.2d 465, 468 (R.I. 2000) (citing Rhode Island Brotherhood of Correctional Officers v. State Department of Corrections, 707 A.2d 1229, 1234 (R.I. 1998)). Clearly, "[w]hether a dispute is arbitrable is a question of law that this Court reviews de novo." Torrado Architects v. Rhode Island Department of Human Services, 102 A.3d 655, 657 (R.I. 2014) (quoting Weeks v. 735 Putnam Pike Operations, LLC, 85 A.3d 1147, 1151 (R.I. 2014)). "Our heightened level of review in [arbitrability] cases is predicated on the possibility that an arbitrator might be called upon to consider and to interpret a CBA in such a way that it would alter existing statutory policies or override other supervening state law governing the public-employment sector." Rhode Island Brotherhood of Correctional Officers, 707 A.2d at 1234. If that occurs, the award must be vacated.

## Discussion

### Mootness

Although neither party raises the issue, we first must address the threshold question of justiciability. This Court recognizes "the need, apart from certain exceptional circumstances, to confine judicial review only to those cases that present a ripe case or controversy." City of Cranston v. Rhode Island Laborers' District Council, Local 1033, 960 A.2d 529, 533 (R.I. 2008) (citing State v. Lead Industries Association, Inc., 898 A.2d 1234, 1238 (R.I. 2006)). "If this Court's judgment would fail to have a practical effect on the existing controversy, the question is

moot, and we will not render an opinion on the matter." Id. (citing Morris v. D'Amario, 416 A.2d 137, 139 (R.I. 1980)). However, one "exception to the mootness doctrine exists for those cases that are 'of extreme public importance, which [are] capable of repetition but which [evade] review.'" Id. (quoting Arnold v. Lebel, 941 A.2d 813, 819 (R.I. 2007)).

When this case was submitted to arbitration, a live case or controversy existed between the parties because Officer Heaton had not yet decided to complete her full twenty years of service. However, while the grievance proceeded to arbitration, Officer Heaton elected to work the full twenty years, and, because she had retired, the arbitrator determined that there was no remedy available to her. Although no remedy was available in this case, we nonetheless are satisfied that in the context of this case, the dispute warrants our review. It is obvious that there are other city employees who are members of MERS so that the viability of the round-up rule in the face of a similar factual scenario is capable of repetition, yet may evade review, simply based on the passage of time. Accordingly, we shall proceed to decide this controversy.

**The Arbitration Award**

We note at the outset that this Court has grave reservations regarding whether this dispute was arbitrable in the first instance. However, we need not address that issue because, in any event, it is clear that the arbitrator exceeded his authority by attempting to enforce a CBA provision in direct contravention of state law. This Court has declared that "a valid employment requirement prescribed by state law * * * is not a proper subject for arbitration." Rhode Island Alliance of Social Services Employees, Local 580, SEIU, 747 A.2d at 468 (quoting Town of West Warwick v. Local 2045, Council 94, 714 A.2d 611, 612 (R.I. 1998) (mem.)). "[A]n arbitrator cannot resolve a labor dispute by issuing a ruling that would conflict with or compromise the statutory authority or legal obligations of a department of state government." Id.

(citing State, Department of Mental Health, Retardation, and Hospitals v. Rhode Island Council 94 AFSCME, AFL-CIO, 692 A.2d 318, 321-22 (R.I. 1997)). This Court has also noted that "statutory obligations cannot be bargained away via contrary provisions in a CBA, nor can they be compromised by the past or present practices of the parties. And they certainly cannot be negated by an arbitrator who purports to do so through the medium of 'contract interpretation.'" Id. at 469 (emphasis added). An arbitration award must be vacated when it contravenes state law "because, in terms of priority, 'applicable state * * * law trumps contrary contract provisions, contrary practices of the parties, and contrary arbitration awards.'" Woonsocket Teachers' Guild, Local 951, AFT v. Woonsocket School Committee, 770 A.2d 834, 838 (R.I. 2001) (quoting Rhode Island Alliance of Social Services Employees, Local 580, SEIU, 747 A.2d at 469). Accordingly, arbitration awards that contravene state law "are unenforceable because the arbitrator has no authority to make them." Id. at 839 (citing Rhode Island Alliance of Social Services Employees, Local 580, SEIU, 747 A.2d at 469).

In the case before us, the trial justice determined that "there is a direct conflict between the round-up rule and state law." He noted that "[a]rbitration awards that contravene state law, or enforce CBA provisions in contravention of state law, are in excess of an arbitrator's authority because the award reaches a determination on an issue that is, in fact, not arbitrable." See Rhode Island Brotherhood of Correctional Officers, 707 A.2d at 1235 (stating that "governmental employers may not bargain away authority that has already been delegated to management or to other governmental agents by state law"). The trial justice correctly observed that "[t]he reasoning behind this rule is that 'in a CBA, governmental employers may not bargain away authority that has already been delegated to management or to other governmental agents by state law or other paramount public policy.'" The trial justice found that there was "a direct

conflict between the round-up rule and state law" because the authority to determine what constitutes a year of service is statutorily assigned to a state agency. He held "that the round-up rule in the CBAs contravenes state law and, consequently, the arbitrator's decision to the contrary was patently irrational and exceeded his authority." The trial justice found that the round-up rule:

> "specifically provides that, for the purposes of determining credited service for a pension, any year in which more than six months have been served will be considered a complete year of service. However, § 45-21-14 specifically provides '[t]he retirement board fixes and determines, by appropriate rules and regulations, how much service in any year is equivalent to a year of service.' (Emphasis added.)"

Significantly, the trial justice held that "[t]he City and the Union cannot dictate what amount of time served in a year will be credited as a year when that duty is given to the retirement board. Allowing anyone but the retirement board to make such a determination would be in direct conflict with § 45-21-14." The trial justice also held that "[i]n addition to contravening the [s]tate's right to determine how much service in a year will be deemed a year of service, the round-up rule, and the [a]ward enforcing it, further contravene state law because they are in direct conflict with §§ 45-21.2-22 * * * (1) and 45-21.2- 5* * * (8)." Specifically, he stated:

> "Section 45-21.2-22 * * * (1) allows local legislative bodies of cities and towns to permit the retirement of a member of MERS, provided that the member has completed at least twenty years of total service. The special legislation passed by the General Assembly to incorporate Cranston police officers into MERS, as codified in § 45-21.2-5, also states that any member of the Cranston Police Department may retire under MERS, provided he or she has earned a service retirement allowance for twenty years of service. However, the round-up rule would allow retirement at only nineteen years, six months, and one day. This is clearly in direct conflict with the twenty years required by statute."

Additionally, the trial justice held that "the arbitrator's comparison to the City contracting

with a private company to provide pension benefits is off base" because "MERS is governed by state statute" and "state statutes preempt ordinances and contracts[,]" and, therefore, "the arbitrator exceeded his authority by issuing an irrational award, in contravention of state law." See Pawtucket School Committee v. Pawtucket Teachers Alliance, 610 A.2d 1104, 1106 (R.I. 1992). In Pawtucket School Committee, a union sought to arbitrate whether a school committee violated a collective-bargaining agreement when, after a full hearing, the school committee voted to change a student's biology grade. Id. at 1105. We held that "[t]he union's claim of right under the collective-bargaining agreement to seek, by arbitration, relief from the school committee's decision to change the student's grade directly conflicts with a statutorily created right" because "[u]nder [G.L. 1956] § 16-39-2 the commissioner, not an arbitrator, has the power to provide relief from the school committee's decision to change the student's grade." Pawtucket School Committee, 610 A.2d at 1107. Further, we also have declared that "labor disputes and grievances that seek to modify applicable state law are not subject to arbitration because the arbitrator has no power to do so even if the parties to a CBA have [allegedly] agreed to such a modification * * *." Rhode Island Alliance of Social Services Employees, Local 580, SEIU, 747 A.2d at 469.

Although we have recognized that cities and towns may enter into contracts designed to give greater benefits than state law provides, that authority is not without limitation. See Chester v. aRusso, 667 A.2d 519, 522 (R.I. 1995) (stating that the Court does not "prohibit parties from entering into a legally enforceable contract that provides greater benefits than are set out in the relevant statute"). Cities and towns may not contract to provide benefits that conflict with state law or seek to usurp authority that is vested in a state agency.

Before this Court, the union asserts that the dispute is arbitrable because, it contends,

there is no direct conflict between the MERS statute and the CBA, MOA, and Cranston City Ordinance. The union asserts that, "given that the statute concerning computation of a year of service does not contain a term that prohibits or is inconsistent with the round-up rule, it certainly cannot be a source of a 'direct conflict' * * *." The union also argues that the trial justice improperly confused the concepts of "work" and "service credit," asserting that "there is nothing within the retirement system that indicates that a year of service always means a full year of actual worked performed * * *." According to the union, "the round-up rule cannot be inconsistent with MERS if the rule itself is permitted for other participants." This argument misses the mark. We are not confronted with a statutory prohibition, but rather a statutory requirement of twenty years of service and an allocation of authority to a state agency to determine what constitutes a year of service.[10]

The dispute before the Court centers on § 45-21.2-22, under which an employee in MERS will be eligible for a pension after completing twenty years of service. The round-up rule, cited in the CBA, MOA, and Cranston City Ordinance purports to define twenty years of service as anything more than nineteen years, six months and one day and provides that an employee is eligible for a pension after completing less than twenty years, in direct contravention of the statute. In 1995, Officer Heaton made the decision to opt into MERS. Section 45-21.2-5(8) was enacted in 1996 and did not provide for the round-up rule for purposes of calculating retirement eligibility. Neither the city nor the union had any authority to adopt a contract provision, an MOA, or an ordinance that was in conflict with state law. See Pawtucket School Committee, 610 A.2d at 1106 (noting that state statutes preempt ordinances and contracts).

---

[10] General Laws 1956 § 45-21-14(a) states that "[t]he retirement board fixes and determines, by appropriate rules and regulations, how much service in any year is equivalent to a year of service * * *."

Finally, we recognize that the General Assembly has enacted other legislation that included the round-up rule in limited circumstances.[11] We are of the opinion that, by adopting the round-up rule for some, but not all, members of the retirement system, the General Assembly elected to define a year of service for certain retirees and not for anyone in MERS; that authority remains with the retirement board. See G.L. 1956 § 45-21-14. The city is not a self-insurer for this computation. Therefore, the decision of the arbitrator that a MERS member can utilize provisions in the CBA that contradict state law was improper and exceeded his authority and properly was vacated.

Accordingly, we are of the opinion that the trial justice's decision was correct, and we affirm it.

## Conclusion

For the reasons set forth in this opinion, the judgment of the Superior Court is affirmed. The papers may be remanded to the Superior Court.

---

[11] Sections 45-21-14.1 (repealed by P.L. 2011, ch. 349, § 1 effective July 13, 2011); 45-21-17.1.



# RHODE ISLAND SUPREME COURT CLERK'S OFFICE

## *Clerk's Office Order/Opinion Cover Sheet*

**TITLE OF CASE:** City of Cranston v. International Brotherhood of Police Officers, Local 301.

**CASE NO:** No. 2014-15-Appeal.
(PM 12-4837)

**COURT:** Supreme Court

**DATE OPINION FILED:** May 29, 2015

**JUSTICES:** Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**WRITTEN BY:** Associate Justice Maureen McKenna Goldberg

**SOURCE OF APPEAL:** Providence County Superior Court

**JUDGE FROM LOWER COURT**:

Associate Justice Bennett R. Gallo

**ATTORNEYS ON APPEAL:**

For Plaintiff: Vincent F. Ragosta, Jr., Esq.

For Defendant: Carly B. Iafrate, Esq.