**Russell L. HOUDE, Sr.**

v.

**STATE of Rhode Island et al.**

**No. 2008–55–Appeal.**

Supreme Court of Rhode Island.

June 24, 2009.

Sean M. McAteer, Esq., for Plaintiff.

George H. Rinaldi, Esq., Providence, for Defendant.

Present: GOLDBERG, Acting C.J., FLAHERTY, SUTTELL, ROBINSON, JJ., and WILLIAMS, C.J. (ret.).

## O P I N I O N

Justice SUTTELL, for the Court.

"[A] person that started in to carry a cat home by the tail was gitting knowledge that was always going to be useful to him, and warn't ever going to grow dim or doubtful."[1]

This case exemplifies Mark Twain's witty observation instructing us that every choice is attended by consequences. The

---

1. Mark Twain, Tom Sawyer Abroad 154 (Shelley Fisher Fishkin ed., Oxford University Press 1996) (1894).

plaintiff, Russell L. Houde, Sr., appeals from a Superior Court judgment in favor of the defendant, State of Rhode Island. Mr. Houde sought a judgment declaring that he retained his status of "classified employee" and his concomitant entitlement to certain benefits after his employer, the Blackstone Valley District Commission (BVDC), merged with the Narragansett Bay Commission (NBC). We entertained oral argument pursuant to an order directing the parties to show cause why the issues raised in this appeal should not be summarily decided. After examining the written and oral submissions of the parties, we are of the opinion that further briefing or argument is unnecessary. For the reasons set forth below, we affirm the judgment of the Superior Court.

## I

### Facts and Procedural History

Mr. Houde began working for the state on August 22, 1971, as a chemist with the Department of Health. Mr. Houde later moved to the BVDC where he continued to work as a supervising sanitary chemist. In 1991, the General Assembly merged the

BVDC with the NBC in an effort to consolidate two agencies that had overlapping functions. *See* G.L. 1956 § 46–25.1–1, as enacted by P.L. 1991, ch. 309, § 2. The merger became effective on December 31, 1991. Under the NBC's enabling statute at the time, all technical experts were required to be in the nonclassified service of the state and were precluded from participation in the state retirement system.[2] On November 20, 1991, Mr. Houde received a certificate of twenty years of service as a state employee, memorializing his attainment of "full status" within the state employee system. Among the benefits of "full status" is the so-called "bumping right" which entitles a laid off employee to a lateral move to a comparable state position with a similar pay grade.[3]

In preparation for the merger, before its effective date, the NBC began removing the classified status of all technical experts who would become NBC employees on the merger date. As part of this effort, NBC management met with Mr. Houde on December 17, 1991 to discuss his transition to nonclassified employment status. At that meeting, Mr. Houde expressed his interest

2. General Laws 1956 § 46–25–8, as amended by P.L. 1986, ch. 349, § 1, provided in relevant part, "The executive director and such technical experts, officers, agents, and attorneys so employed shall be in the nonclassified service of the state of Rhode Island and exempt from the provisions of chapters 8, 9, and 10 of title 36."

3. General Laws 1956 § 36–4–59 provides in relevant part:
    "(a)(1) Every person who shall have twenty (20) years, not necessarily consecutive, of service credit, the credits having been earned in either the classified, nonclassified, or unclassified service of the state or a combination of both, shall be deemed to have acquired full status in the position he or she holds at the time of obtaining twenty (20) years of service credit.

    "(2) For any other position he or she may hold subsequent to the time of obtaining twenty (20) years of service credit, the person, subject to a then existing list, is to be deemed to have acquired full status in the subsequent position and shall be protected by the provisions of this chapter, provided, however:
    "* * *
    "(ii) That in case of layoff or the abolition of a position through reorganization or otherwise, any person in that position or subject to layoff, who has full status, otherwise qualified under this section, shall be retained within the state services in a position of similar grade;
    "(iii) That this section shall not apply to employees of the state government whose method of appointment and salary and term of office is specified by statute * * *."

in the change and requested a contract for his signature. Mr. Houde's initial enthusiasm apparently waned, however, because he returned the proposed contract unsigned with a note attached indicating that he wished to remain a classified employee, primarily to remain in the state retirement system. He continued to work as a supervising sanitary chemist for the NBC, and he did not seek a transfer to another classified position of a similar grade with the state.

Mr. Houde testified that the NBC assured him that he had a three-year period in which he could exercise his right to transfer to another equivalent classified position. Notwithstanding his unwillingness to leave the classified service, on January 23, 1993, the NBC processed the paperwork necessary to transfer Mr. Houde from the classified service to the nonclassified service.[4] Mr. Houde conceded that he did not request a transfer to another state position with classified status, and that he received the additional pay and benefits that accompanied his transition to nonclassified status. Mr. Houde testified that, believing that he had three years in which to choose whether to remain with the NBC or seek a transfer, he renewed his request to retain his classified status at the NBC in August 1993 and again in January 1994.

Failing to make headway with NBC management, Mr. Houde and two other former classified coworkers filed an appeal in February 1994 with the state Personnel Appeal Board (the board) seeking to reinstate their classified status. In his letter to the board, Mr. Houde wrote, "my position has been arbitrarily changed from a classified to [a][non]classified position and I have been dropped from the State Retirement Plan despite my objections." The board dismissed this action for lack of jurisdiction under G.L. 1956 § 36–4–42 because the plaintiffs did not meet the definition of an "aggrieved party."[5] The plaintiffs appealed this ruling to the Superior Court, which, though disagreeing with the board's interpretation of the statutory definition of an "aggrieved party," affirmed its ruling because the plaintiffs had failed to allege any action resulting in demotion, layoff, or discriminatory treatment. We dismissed the plaintiffs' subsequent appeal for failure to properly seek review by petition for a writ of certiorari as required by G.L. 1956 § 42–35–16.[6] *See Carrier v. Personnel Appeal Board,* 701 A.2d 1027, 1028 (R.I.1997) (mem.). After this adverse result, one of Mr. Houde's coworkers retired rather than become nonclassified, and the other obtained a transfer that preserved her classified status.

Mr. Houde, however, chose to continue to work for the NBC as a supervising

---

**4.** The Department of Administration applied this change in status retroactively to November 22, 1992 and adjusted Mr. Houde's salary and benefits accordingly.

**5.** Section 36–4–42 provides in relevant part:
  "Any state employee with provisional, probationary, or permanent status who feels aggrieved by an action of an appointing authority resulting in a demotion, suspension, layoff, or dismissal or by any personnel action which an appointing authority might take which causes the person to believe that he or she had been discriminated against because of his or her race, sex, age,

disability, or his or her political or religious beliefs, may, within thirty (30) calendar days of the mailing of the notice of that action, appeal in writing to the personnel appeal board for a review or public hearing."

**6.** Though the case was not decided on the merits, we noted that in 1991 "the plaintiffs were *notified to make an election to become* either [a] non-classified employee[ ] of the NBC or to exercise an option to obtain equivalent employment elsewhere in state government." *Carrier v. Personnel Appeal Board,* 701 A.2d 1027, 1028 (R.I.1997) (mem.).

chemist. During this period, Mr. Houde enjoyed a significant increase in his salary as well as certain other benefits available only to nonclassified employees. He no longer contributed to the state employees' retirement fund; rather he enrolled in the NBC's Simplified Employee Pension Plan, which was fully funded by the NBC. Mr. Houde also enrolled in a long-term disability plan that the NBC offered exclusively to nonclassified employees. According to Denise Mello, the human resources manager at the NBC, Mr. Houde earned at least $7,000 more annually as a nonclassified employee than he would have had he remained classified by transferring to another state position at the same pay grade. Mr. Houde also conceded that during this period he never asked for assistance from the Division of Personnel in finding a classified position.

The General Assembly amended the NBC statute in 1999, effectuating the complete privatization of the commission and removing all employees from the state system.[7] According to the state personnel administrator, Mr. Houde ceased to be a state employee by July 1999. On April 24, 2000, the NBC informed Mr. Houde of his termination as part of a larger consolidation of laboratory positions.[8] Mr. Houde tried unsuccessfully to find new state employment and officially retired in December 2002.

Mr. Houde filed suit in Superior Court seeking a declaratory judgment that he had retained his classified status throughout his employment with the NBC. After reviewing the parties' submissions and conducting a bench trial on October 12, 2007, the trial justice denied Mr. Houde's petition for declaratory relief in a written decision issued October 24, 2007. The trial justice ruled that G.L. 1956 § 46–25–8 unambiguously prohibited technical experts from classified status,[9] and thus any assurances made by NBC management concerning a three-year decisional window amounted to an *ultra-vires* representation without the force of law. The trial justice reasoned that "a plain reading of § 46–25–8, coupled with the State's repeated efforts to formalize Plaintiff's status conversion and Plaintiff's acceptance of the benefits of nonclassified employment, show that all parties were aware that continuing classified employment with NBC was impossible." Moreover, the trial justice found that Mr. Houde had waived his right to transfer to another state classified position by failing to seek alternative state employment and receiving the benefits of his nonclassified position. Final judgment was entered on November 8, 2007, from which Mr. Houde timely appealed.

On appeal, Mr. Houde renews his argument that NBC employment was not inconsistent with classified status and that

---

7. Section 46–25–8(c) provides in relevant part:

   "Employees of the commission shall not, by reason of their employment, be employees of the state for any purpose, any provision of the general laws to the contrary notwithstanding, including, without limiting the generality of the foregoing, chapters 29, 39, and 42 of title 28 and chapters 4, 8, 9, and 10 of title 36. Those employees of the commission who were employed prior to June 30, 1999, shall continue to be covered by §§ 36–4–59, 36–5–7 and 36–5–8. The employees are not entitled to the provisions of

§§ 36–4–59, 36–5–7 and 36–5–8 while employed by the commission. The employees are only entitled to the provisions of these statutes in the event that any such employee returns to employment in the classified service in a department within the executive branch."

8. Mr. Houde continued to receive a salary until May 22, 2000.

9. Mr. Houde admitted during his deposition that he was a technical expert.

the trial justice erred in finding that he waived such status by accepting his increase in salary and failing to exercise his right to transfer at the time of the merger.

## II

### Standard of Review

■ "A Superior Court decision granting or denying declaratory relief is reviewed with great deference by this Court." *Providence Lodge No. 3, Fraternal Order of Police v. Providence External Review Authority,* 951 A.2d 497, 502 (R.I. 2008) (citing *Fleet National Bank v. 175 Post Road, LLC,* 851 A.2d 267, 273 (R.I. 2004)). When deciding an action for declaratory judgment, a trial judge makes all findings of fact without a jury. *Fleet National Bank,* 851 A.2d at 273. "It is well-established that 'the findings of fact of a trial justice, sitting without a jury, will be given great weight and will not be disturbed absent a showing that the trial justice overlooked or misconceived material evidence or was otherwise clearly wrong.'" *Id.* (quoting *Casco Indemnity Co. v. O'Connor,* 755 A.2d 779, 782 (R.I. 2000)). "The task of determining the credibility of witnesses is peculiarly the function of the trial justice when sitting without a jury." *McEntee v. Davis,* 861 A.2d 459, 464 (R.I.2004) (quoting *Bogosian v. Bederman,* 823 A.2d 1117, 1120 (R.I.2003)). Additionally, "the 'resolution of mixed questions of law and fact, as well as the inferences and conclusions drawn from the testimony and evidence, are entitled to the same deference.'" *Narragansett Electric Co. v. Carbone,* 898 A.2d 87, 97 (R.I.2006) (quoting *Hawkins v. Town of Foster,* 708 A.2d 178, 182 (R.I.1998)). "A trial justice's findings on questions of law, however, are reviewed *de novo.*" *Fleet National Bank,* 851 A.2d at 273.

## III

### Discussion

■ Mr. Houde faced a choice in 1991 when the General Assembly merged the BVDC with the NBC: either accept a nonclassified position with a greater salary and several other ancillary benefits, but without eligibility for the state retirement system, or exercise his right as a "full status" employee to transfer to a comparable position and retain his classified status. Mr. Houde would have this Court conclude that for nearly a decade he successfully avoided this choice by persevering in his claim of classified status while at the same time enjoying all of the financial benefits of nonclassified status. Mr. Houde notes that he "loudly trumpeted" his classified status when he began his employment with the NBC and repeatedly refused to sign an employment contract memorializing his nonclassified status. Yet neither Mr. Houde's stentorian protestations nor the NBC's representations can vitiate the clear statutory declaration that technical experts "shall be in the nonclassified service." Section 46–25–8, as amended by P.L. 1986, ch. 349, § 1.

The NBC's enabling statute expressly prohibited technical experts from designation as classified employees, requiring its management to transition those affected BVDC employees who wished to work for the NBC to nonclassified status. *See* § 46–25–8. As a "full status" employee, Mr. Houde was entitled to retain his classified status by transferring "within the state services [to] a position of similar grade." *See* § 36–4–59(a)(2)(ii). While this transition was muddled by the NBC's apparently gratuitous offer to give merged employees a three-year "window" in which to decide whether to transfer, the statute contains no such language and the trial justice properly described this as an *ultra-vires* promise without the force of law.

 

*See Romano v. Retirement Board of the Employees' Retirement System of Rhode Island,* 767 A.2d 35, 38 (R.I.2001) (holding "the doctrine of equitable estoppel should not be applied against a governmental entity like the board when, as here, the alleged representations or conduct relied upon were *ultra vires* or in conflict with applicable law").

Nonetheless, whatever uncertainty existed was plainly resolved when the NBC unilaterally transferred Mr. Houde from the classified service to the nonclassified service and initiated a compensation scheme consistent with Mr. Houde's new status. Mr. Houde contends that there is no evidence indicating he accepted the higher salary in exchange for taking a nonclassified position. There is no dispute, however, that he accepted the pay raise as well as other benefits available only to nonclassified employees.[10] In light of Mr. Houde's steady resolve to preserve his classified status, the trial justice did not find his assertion that he was unaware of the eventual change in status to be credible. Mr. Houde has provided us no reason to question the trial justice's credibility determinations or his finding that Mr. Houde "voluntarily relinquished his right to remain in a classified position by continuing to work for NBC and receiving the benefits of the nonclassified position." *See Haydon v. Stamas,* 900 A.2d 1104, 1112–13 (R.I.2006) ("Waiver that results from a party's actions may be expressed in the actions themselves or implied from them, and 'may arise where a person against whom the waiver is asserted has pursued such a course of conduct as to sufficiently evidence an intention to waive a right or where his [or her] conduct is inconsistent with any other intention than

to waive it.'") (quoting *Sturbridge Home Builders, Inc. v. Downing Seaport, Inc.,* 890 A.2d 58, 65 (R.I.2005)). Had it been his preference, Mr. Houde could have requested a transfer and preserved his classified status, but he chose instead to accept the increased compensation and ancillary benefits over the ensuing eight years. Accordingly, the trial justice did not err in determining that Mr. Houde was a nonclassified employee when the state privatized his position in 1999.

# IV

## Conclusion

For the reasons set forth in this opinion, we affirm the judgment of the Superior Court. The papers in the case shall be remanded thereto.

---

10. Mr. Houde argues that "receipt [of increased salary] is not the same thing as acceptance." We find this assertion unconvincing.