June 27, 2018

**Supreme Court**

No. 2017-330-Appeal.
(PC 17-918)

State of Rhode Island, by and through     :
     Attorney General Peter Kilmartin

v.                 :

Rhode Island Troopers Association.     :

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

State of Rhode Island, by and through    :
  Attorney General Peter Kilmartin

                v.             :

Rhode Island Troopers Association.    :

Present:  Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**O P I N I O N**

**Justice Goldberg, for the Court.**  This case of first impression is before the Supreme Court on appeal by the defendant, the Rhode Island Troopers Association (RITA), from a judgment granting declaratory and equitable relief in favor of the plaintiff, the State of Rhode Island (the state).  The Superior Court declared that the Governmental Tort Liability Act, G.L. 1956 chapter 31 of title 9, vests the Attorney General with the nondelegable, nontransferable legal duty to determine whether the state should provide a defense and indemnification in a civil action brought against a state employee.  The Superior Court also permanently enjoined arbitration of issues related to the Attorney General's decision to decline to provide a defense and indemnification for Rhode Island State Trooper James Donnelly-Taylor (Trooper Taylor) in a pending federal civil rights action brought against him in his individual capacity.  For the reasons set forth herein, we affirm the first six declarations and vacate the remaining two declarations in the judgment of the Superior Court.

- 1 -

**Facts and Travel**

This case stems from an incident that occurred on February 26, 2014, when two members of the Rhode Island State Police, Trooper Taylor and Trooper Gregory Palmer (Trooper Palmer), initiated a traffic stop of Lionel Monsanto (Monsanto) after observing him speeding in Pawtucket, Rhode Island. When the officers learned that Monsanto's driver's license had expired, he was arrested and transported to the State Police Lincoln Barracks for processing.[1] After he was processed and booked, Monsanto was escorted to a cellblock. It was then that Trooper Taylor is alleged to have entered the cellblock and physically assaulted Monsanto multiple times. This incident was captured on a video recording that graphically depicts the foregoing episode.[2] The events of that evening were presented to a grand jury. Trooper Taylor was indicted on a charge of assault, to which he subsequently entered a plea of nolo contendere. During his plea colloquy, Trooper Taylor knowingly waived his constitutional rights and admitted to the underlying facts in the indictment, including that he assaulted Monsanto. A judge of the Sixth Division District Court accepted the plea and ordered the case to be filed in accordance with G.L. 1956 § 12-10-12. Trooper Taylor also was ordered to perform twenty-five hours of community service work. The criminal disposition subsequently was expunged in accordance with § 12-10-12(c). No criminal record resulted from this disposition.

On March 24, 2016, Monsanto filed suit against the following defendants in the United States District Court for the District of Rhode Island: the State of Rhode Island; Trooper Taylor,

---

[1] As a result of Monsanto driving on an expired license, as well as subsequent events that transpired during the traffic stop, multiple charges were brought against Monsanto, all of which were later dismissed by the Department of the Attorney General.

[2] This video recording was sealed pursuant to a protective order. This Court directed its production, and we have viewed what transpired in the cellblock on February 26, 2014.

individually and in his official capacity; Trooper Palmer, individually and in his official capacity; the Rhode Island State Police; and Colonel Steven G. O'Donnell, individually and in his official capacity. Mr. Monsanto alleged federal civil rights violations under 42 U.S.C. § 1983; conspiracy to violate plaintiff's civil rights; assault and battery; malicious prosecution; false imprisonment and false arrest; intentional infliction of emotional distress; and violations of G.L. 1956 § 9-1-35 and G.L. 1956 § 31-21.2-3,[3] causes of action based on alleged racial harassment by racial profiling. The complaint also seeks punitive damages.

On April 8, 2016, the Attorney General received a written request for representation from Trooper Taylor. This request stated, in pertinent part:

> "I respectfully request legal representation and indemnification with regard to the * * * civil action filed [by Monsanto]. If the Attorney General is unable to represent me, I request that private counsel be engaged by the State to represent me in this matter. This request is in accordance with the RIGL, to include but not

---

[3] General Laws 1956 § 9-1-35(a) states:

> "Any person, who is maliciously subjected to an act or acts which would reasonably be construed as intended to harass or intimidate the person because of his or her race, religion, or national origin, may bring an action in the superior court against the perpetrator of the act or acts for compensatory damages including damages for emotional distress. The court, in its discretion, may also restrain and enjoin such future acts by the defendant."

In addition, G.L. 1956 § 31-21.2-3 provides that:

> "No state or municipal law enforcement officer or law enforcement agency shall engage in racial profiling. For purposes of this chapter, 'racial profiling' means the detention, interdiction or other disparate treatment of an individual on the basis, in whole or in part, of the racial or ethnic status of such individual, except when such status is used in combination with other identifying factors seeking to apprehend a specific suspect whose racial or ethnic status is part of the description of the suspect, which description is timely and reliable."

limited to, 42-28-20, and the Rhode Island State Police Troopers Association Collective Bargaining Agreement, section 29.17."

On May 15, 2016, the Department of the Attorney General responded:

> "Pursuant to R.I. Gen. Laws § 9-31-9 and your plea of no contest to assault, a determination has been made by the Attorney General that due to allegations raised in the Complaint—most notably, but not limited to, the intentional torts of assault and battery and intentional infliction of emotional distress—that the State is not legally obligated to provide you with legal representation for any cause of action filed against you in your individual capacity. Hence, the Attorney General will not represent you for any allegations raised in counts two through eight of the Complaint."

However, the Attorney General is representing Trooper Taylor in his official capacity. An affidavit also was submitted to the Superior Court by the Department of the Attorney General that stated, in relevant part:

> "Prior to making the determination in 2016 that the State of Rhode Island would not defend or indemnify James Donnelly Taylor in the federal action *Monsanto v. State, et al.*, No. 16-0147, the Department of Attorney General had available to it: information from the criminal proceedings in *State v. Lionel Monsanto*, including reports from the Rhode Island State Police; information from the criminal proceedings in State v. James Donnelly Taylor, including reports, a video of the incident at the Lincoln Barracks in February of 2014, and the fact that Donnelly Taylor was indicted by a grand jury and later pled *nolo contendere* in the Sixth District Court to a charge of misdemeanor assault on Monsanto. There was also privileged communication and exchange of information between the Department of Attorney General and the Department of Public Safety."

The Attorney General's refusal to provide a defense to Trooper Taylor in his individual capacity was based on the Attorney General's determination that Trooper Taylor's conduct fell "outside the scope of his employment" and amounted to willful misconduct in accordance with §§ 9-31-8 and 9-31-9, provisions of the Governmental Tort Liability Act.[4] The RITA filed a grievance on

---

[4] General Laws 1956 § 9-31-8 provides:

Trooper Taylor's behalf with the State Police alleging a violation of the applicable collective bargaining agreement (CBA), specifically, Article 29.17.[5]  In that grievance, RITA asserted that the state must

> "honor its contractual obligations contained in Article 29.17 and shall provide Trooper Donnelly Taylor with full legal defense of all claims asserted in *Monsanto v. State of Rhode Island et al.*, and shall also provide Trooper Donnelly Taylor with full

---

> "Except as provided in § 9-31-9, the attorney general shall, upon a written request of an employee or former employee of the state of Rhode Island, defend any action brought against the state employee or former state employee, on account of an act or omission that occurred within the scope of his or her employment with the state."

In addition, G.L. 1956 § 9-31-9 states:

> "The attorney general may refuse to defend an action referred to in § 9-31-8 if he or she determines that:
>
> "(1) The act or omission was not within the scope of employment;
> "(2) The act or the failure to act was because of actual fraud, willful misconduct, or actual malice;
> "(3) The defense of the action or proceeding by the attorney general would create a conflict of interest between the state of Rhode Island and the employee or former employee;
> "(4) Within ten (10) days of the time he or she is served with any summons, complaint, process, notice, demand, or pleading, the employee or former employee fails to deliver the original or a copy thereof to the attorney general or his or her designee; or
> "(5) The state employee or former state employee refuses to cooperate fully with the attorney general's defense."

[5] Article 29.17 of the CBA states, in pertinent part:

> "The State shall provide legal counsel for any legal action arising out of conduct of State Troopers acting within the scope of their employment. The State shall also provide full indemnification for any liability, expenses or damages of any nature incurred by State Troopers resulting from any legal action arising out of conduct performed within the scope of employment. With respect to the provision of legal counsel in criminal matters, any legal action includes alleged criminal conduct arising out of conduct of the State Troopers acting within the scope of their employment."

- 5 -

indemnification for all liabilities, expenses and damages of any nature resulting from that legal action."

Thus, through the grievance and a subsequent demand for arbitration, RITA sought to compel the state to comply with the terms of the CBA by funding a legal defense for Trooper Taylor in the federal action and indemnify him against any damages that might be awarded to Monsanto and against Trooper Taylor, including punitive damages.

On June 3, 2016, the State Police denied RITA's grievance based on the Attorney General's refusal to represent Trooper Taylor in his individual capacity. On June 30, 2016, RITA filed a "Demand for Arbitration" and sought the following remedy:

> "A determination that the State honor its obligations contained in Article 29.17; that the State provide Trooper Donnelly-Taylor with full legal defense of all claims asserted against him in *Monsanto v. State of Rhode Island et al.* and/or full indemnification for all liabilities, expenses and damages of any nature resulting from that legal action; that the State shall be directed to reimburse to Trooper Donnelly-Taylor all legal fees and expenses incurred by him with respect to the representation in that legal action; and that the State reimburse the Rhode Island State Troopers Association for any damages it suffered as a result of the State's flagrant violation of Article 29.17."

Based upon an agreed statement of facts filed by the parties in Superior Court, it is undisputed that the arbitrator, at the request of RITA, issued a subpoena seeking thirty-one categories of documents. The state did not make the requested production, but instead sought to have the subpoena quashed. Monsanto thereafter filed a third amended complaint in the federal court action; and Trooper Taylor, in his individual capacity, responded by filing a cross-claim and a third-party complaint against the Governor of Rhode Island, the General Treasurer of Rhode Island, and the Director of the Department of Administration, all in their official capacities; the Attorney General, in his individual and official capacities; and then-colonel of the

State Police Steven G. O'Donnell, in his individual and official capacities.[6] Although Trooper Taylor's third-party complaint and cross-claim raised numerous allegations, the case on appeal before this Court centers on the claims arising from the Attorney General's refusal to defend and indemnify Trooper Taylor in his individual capacity in that federal action.[7]

On February 27, 2017, the state filed a "Verified Complaint for Declaratory and Injunctive Relief" in the Superior Court that requested, *inter alia*, preliminary and permanent injunctive relief against the arbitration of RITA's grievance; a declaration that the grievance is not arbitrable; and a declaration that the Governmental Tort Liability Act "tasks the Attorney General with the non-delegable, non-transferable, sole legal duty to determine when and whether, in an action filed against a state employee, to provide a defense and/or indemnification[.]" The state also sought a declaration that Article 29.17 of the CBA is valid only when read in conjunction with the Governmental Tort Liability Act. On March 28, 2017, a justice of the Superior Court granted temporary injunctive relief and stayed the arbitration.

On June 20, 2017, another hearing was held before a second trial justice of the Superior Court regarding the request for declaratory relief, based upon an agreed statement of facts. On July 6, 2017, the trial justice issued a judgment with eight declarations that generally mirror the state's request for relief. The judgment declares:

> "A.    Any further activity and arbitration proceedings related in any way to Defendant RITA's Demand for Arbitration * * * is

---

[6] This cross-claim and third-party complaint was stayed pending trial on Monsanto's claims. That trial was expected to be conducted later in 2018.

[7] The state asked the federal court to certify a question to this Court, including, *inter alia*, whether the Attorney General had the authority to refuse to defend and indemnify a state employee in accordance with the Attorney General's common law, constitutional, and statutory authority; or whether defense and indemnity issues were not within the exclusive purview of the Attorney General. On April 7, 2017, the federal court judge declined to certify the issue and concluded that issues will be "better framed, after a factual record has been established through litigation and trial of the [p]laintiff's direct claims."

permanently stayed and the Defendant [RITA] is temporarily, preliminarily and permanently enjoined from participating in any way in any further related proceedings;

"B.     The issues submitted by Defendant RITA are not substantively arbitrable under the terms of the Collective Bargaining Agreement between the parties or under the Rhode Island constitution or General Laws;

"C.     The Governmental Tort Liability Act tasks the Attorney General with the non-delegable, non-transferable, sole legal duty to determine when and whether, in an action filed against a state employee, to provide a defense and/or indemnification, however this declaration is made without prejudice to any future litigant who wishes to challenge any portion of the statute as unclear or ambiguous or any party who seeks a construction of the language by the courts; in particular, regarding the definition of term 'within the scope of employment' as set forth in the Act[;]

"D.     The matters submitted by Defendant RITA in its Demand for Arbitration are not substantively arbitrable as they are purely matters of state law subject to the right of any future litigant to seek a construction of the statute by the courts without prejudice as declared in paragraph C;

"E.     Article 29.17 is valid only when read in conjunction with language in the Governmental Tort Liability Act vesting sole discretion in the Attorney General as to matters of defense and indemnity;

"F.     Any other interpretation of Article 29.17 is void;

"G.     Neither the Governor nor any Department head can bargain away, contract, or otherwise agree to alter the Attorney General's sole discretion and responsibility as set forth in the Government[al] Tort Liability Act[;]

"H.     The Attorney General's decision as contained in the May 15, 2016 letter is within the scope of his powers and responsibilities and cannot be altered by the Collective Bargaining Agreement."

Before this Court, RITA argues that the Attorney General's constitutional, common law, and statutory authority does not include the power to determine questions of state-paid defense

and indemnification of its members. Although RITA purports to frame this issue as a monetary contractual provision, it pays scant attention to the mandate, in both the statute and the CBA, that the act or omission giving rise to the suit must occur in the course of one's employment. It is RITA's contention that the record on this issue has not been fully developed because of the status of the federal court litigation; yet nonetheless RITA submitted this matter to arbitration.

The RITA further argues that a contractual right to defense and indemnification is separate from a statutory right to defense and indemnification; and that the CBA provision at issue in this case complies with and supplements the Governmental Tort Liability Act. In addition, RITA argues that the state's position encroaches upon the General Assembly's authority to determine the financial terms for state employees, as well as the Governor's power to enter into collective bargaining agreements.

In response, the state argues that the Attorney General is vested with the nondelegable common law, constitutional, and statutory authority to determine whether state employees who are sued in their individual capacity are entitled to representation and indemnification by the state. The state argues that the Governmental Tort Liability Act vests the Attorney General with the sole and nonreviewable discretion to determine whether an employee's conduct was outside the scope of his or her employment, or due to willful misconduct or other enumerated disqualifying factors. Accordingly, the state contends that the Attorney General has the authority to decline to defend a state employee whose conduct is outside the scope of his or her employment or based on willful misconduct. The state further contends that the interpretation of the CBA urged by RITA invades the Attorney General's duties and is therefore erroneous.

**Standard of Review**

It is well settled that "[t]he decision to grant or to deny declaratory relief under the Uniform Declaratory Judgments Act is purely discretionary." *Sullivan v. Chafee*, 703 A.2d 748, 751 (R.I. 1997). We accord great deference to the factual findings of a trial justice sitting without a jury in a declaratory judgment action. *Houde v. State*, 973 A.2d 493, 498 (R.I. 2009). However, questions of law are reviewed *de novo*. *Id.* "Accordingly[,] we review a declaratory decree of the Superior Court with an eye to whether the court abused its discretion, misinterpreted the applicable law, overlooked material facts, or otherwise exceeded its authority." *Sullivan*, 703 A.2d at 751.

**Analysis**

We begin by noting that the declaratory judgment that was requested by the state, and issued by the Superior Court, is unnecessarily broad because it extends beyond the question of the statutory authority of the Attorney General set forth in the Governmental Tort Liability Act. Therefore, we deem it appropriate to narrow the issues raised on appeal to: (1) whether the Attorney General's authority to refuse to provide a defense to a state employee is an arbitrable issue under a collective bargaining agreement; and (2) whether, in accordance with the Governmental Tort Liability Act, the Attorney General is vested with the statutory authority to determine whether a state employee is entitled to legal representation when sued in his or her individual capacity "on account of an act or omission that occurred within the scope of his or her employment with the state"; and whether that authority is delegable or transferable.

Furthermore, we are mindful that the issues in this case arose from litigation that is pending before the United States District Court. We proceed to decide this case with full

appreciation of the need for an efficient resolution of claims brought against the state by a member of the public.

**The Decision Granting Injunctive Relief**

This Court has held that conflicts that arise between state law and a collective bargaining agreement are tasked to the judiciary to resolve. *Vose v. Rhode Island Brotherhood of Correctional Officers*, 587 A.2d 913, 914 (R.I. 1991). Thus, "an arbitrator cannot resolve a labor dispute by issuing a ruling that would conflict with or compromise the statutory authority or legal obligations of a department of state government." *State v. Rhode Island Alliance of Social Services Employees, Local 580, SEIU*, 747 A.2d 465, 468 (R.I. 2000) (citing *State, Department of Mental Health, Retardation, and Hospitals v. Rhode Island Council, 94 AFSCME, AFL-CIO*, 692 A.2d 318, 321-22 (R.I. 1997)). Moreover, we have declared that "a valid employment requirement prescribed by state law * * * is not a proper subject for arbitration." *Id.* (quoting *Town of West Warwick v. Local 245, Council 94*, 714 A.2d 611, 612 (R.I. 1998) (mem.)). This Court has summarized our long-standing jurisprudence surrounding this issue:

> "[A]pplicable state employment law trumps contrary contract provisions, contrary practices of the parties, and contrary arbitration awards. Thus, if a statute contains or provides for nondelegable and/or nonmodifiable duties, rights, and/or obligations, then neither contractual provisions nor purported past practices nor arbitration awards that would alter those mandates are enforceable."

*Id.* at 469; *see also City of Cranston v. International Brotherhood of Police Officers, Local 301*, 115 A.3d 971, 978 (R.I. 2015) ("An arbitration award must be vacated when it contravenes state law because, in terms of priority, applicable state * * * law trumps contrary contract provisions, contrary practices of the parties, and contrary arbitration awards." (internal quotation marks omitted)). Therefore, we have held that

> "labor disputes and grievances that seek to modify applicable state law are not subject to arbitration because the arbitrator has no power to do so even if the parties to a CBA have agreed to such a modification or have conducted themselves in a way that contravenes what applicable state law requires."

*Rhode Island Alliance of Social Services Employees, Local 580, SEIU*, 747 A.2d at 469. Thus, "arbitration awards that contravene state law 'are unenforceable because the arbitrator has *no* authority to make them.'" *City of Cranston*, 115 A.3d at 978 (quoting *Woonsocket Teachers' Guild, Local 951, AFT v. Woonsocket School Committee*, 770 A.2d 834, 838 (R.I. 2001)).

In the case at bar, RITA filed a grievance contending that the state violated the CBA, specifically Article 29.17, by its refusal to provide to Trooper Taylor legal counsel as well as its refusal to provide to Trooper Taylor full indemnification for any liabilities, expenses, or damages resulting from a legal action arising out of conduct performed by Trooper Taylor within the scope of his employment. In its demand for arbitration, RITA sought an arbitral award declaring that the state must, in accordance with Article 29.17 of the CBA, provide Trooper Taylor with full legal defense of all claims asserted against him in the federal court action and full indemnification for all liabilities, expenses, and damages arising out of the legal action.

The RITA argues that there is no direct statutory language that gives the Attorney General the exclusive right to determine whether an employee acts within the scope of employment for the purposes of the state providing representation or determining indemnification. It also asserts that the Attorney General has no authority to interfere with or to seek to nullify financial obligations that bind the state in a collective bargaining agreement with state employees. Moreover, RITA argues that no conflict exists between the CBA and the Governmental Tort Liability Act and therefore the CBA is enforceable and arbitration is the appropriate remedy in this case.

In response, the state argues that the remedy sought through arbitration is in conflict with the Attorney General's authority to decline representation in accordance with the narrow circumstances set forth in § 9-31-9. The state maintains that Article 29.17 of the CBA is valid only when read in conjunction with the Governmental Tort Liability Act, which vests the Attorney General with discretion to decide matters of defense and immunity of state employees. The state argues that this Court is confronted with an issue of state law that cannot be determined by arbitration. Finally, the state posits that arbitration of the Attorney General's decision to decline representation and indemnification would cause a "usurpation of the exclusive statutory authority of the department."

The trial justice concluded that the issues raised in the grievance are not arbitrable. The trial justice declared at the hearing on the state's request for a permanent injunction that to arbitrate the issues in this case would "violate the Attorney General's powers and obligations" and that "[t]he Attorney General holds a constitutional office with specific and significant responsibilities to the people of Rhode Island." The trial justice held that the Attorney General is vested with authority to determine whether to undertake a defense of state employees and that RITA's challenge to that authority is not arbitrable. We agree.

The issues raised in the grievance must be viewed in light of the Governmental Tort Liability Act. Specifically, as set out above, § 9-31-8, titled "Defense of state employees–Attorney general," declares:

> "*Except as provided in § 9-31-9*, the attorney general shall, upon a written request of an employee or former employee of the state of Rhode Island, defend any action brought against the state employee or former state employee, on account of an act or omission that occurred *within the scope of his or her employment* with the state." (Emphasis added.)

Moreover, § 9-31-9, titled "Refusal to defend–Attorney general," provides:

- 13 -

"The attorney general *may refuse* to defend an action referred to in § 9-31-8 if he or she determines that:

"(1) The act or omission was not *within the scope of employment*;
"(2) The act or the failure to act was because of actual fraud, *willful misconduct*, or actual malice;
"(3) The defense of the action or proceeding by the attorney general would create a conflict of interest between the state of Rhode Island and the employee or former employee;
"(4) Within ten (10) days of the time he or she is served with any summons, complaint, process, notice, demand, or pleading, the employee or former employee fails to deliver the original or a copy thereof to the attorney general or his or her designee; or
"(5) The state employee or former state employee refuses to cooperate fully with the attorney general's defense." (Emphasis added.)

Article 29.17 of the CBA—the provision under which RITA asserts its grievance—states:

"The State *shall* provide legal counsel for any legal action arising out of conduct of State Policemen *acting within the scope of their employment*. The State *shall* also provide full indemnification for any liability, expenses or damages of any nature incurred by State Policemen resulting from any legal action *arising out of conduct performed within the scope of employment*. With respect to the provision of legal counsel in criminal matters, any legal action includes alleged criminal conduct arising out of conduct of the State Policemen *acting within the scope of their employment*." (Emphasis added.)

There exists a common thread between the above-quoted provision of the CBA and the statutory scheme of the Governmental Tort Liability Act: A state employee's entitlement to a defense and indemnification is limited to cases in which the conduct giving rise to the suit was performed within the scope of his or her employment and does not fall within the disqualifying factors set forth in § 9-31-9. Whether an employee was acting within the scope of his or her employment, and is therefore entitled to a defense provided by the state, is a question that in the first instance is textually committed to the Attorney General. "The attorney general may refuse to defend an action * * * if he or she determines that * * * [t]he act or omission was not within

- 14 -

the scope of employment." Section 9-31-9. The Attorney General's authority to make this determination is statutorily prescribed in §§ 9-31-8 and 9-31-9. Accordingly, this is the controlling law on this issue; it is not a question capable of resolution by an arbitrator. *See Rhode Island Alliance of Social Services Employees, Local 580, SEIU*, 747 A.2d at 469 (labor disputes and grievances that seek to modify applicable state law are not subject to arbitration because the arbitrator has no power to do so); *see also City of Cranston*, 115 A.3d at 839 ("[A]rbitration awards that contravene state law are unenforceable because the arbitrator has no authority to make them." (internal quotation marks omitted)). In fact, Article 29.17 is silent as to how, when, and by whom a determination is made that an employee's conduct falls within the scope of employment. We are therefore of the opinion that the issues raised in this case are not arbitrable within the collective bargaining process. We uphold the trial justice's decision to permanently enjoin the arbitration proceedings, and we affirm Declarations A, B, D, E, and F of the judgment.

## The Decision Granting Declaratory Relief

Having affirmed the trial justice's decision to permanently enjoin the arbitration proceedings, this Court now turns to the trial justice's remaining declarations. The state requests that this Court affirm the declaration that the Attorney General possesses the nondelegable, nontransferable, sole legal duty to determine whether a state employee was acting within the scope of his or her employment and therefore is entitled to a defense and indemnification. Specifically, Declaration C in the Superior Court judgment provides as follows:

> "The Governmental Tort Liability Act tasks the Attorney General with the non-delegable, non-transferable, sole legal duty to determine when and whether, in an action filed against a state employee, to provide a defense and/or indemnification, however this declaration is made without prejudice to any future litigant who wishes to challenge any portion of the statute as unclear or

- 15 -

> ambiguous or any party who seeks a construction of the language by the courts; [i]n particular, regarding the definition of term 'within the scope of employment' as set forth in the Act."

The parties have framed the issue in this case as resting on the Attorney General's common law, constitutional, and statutory authority to determine whether a state employee who is sued in his or her individual capacity is entitled to representation and indemnification at taxpayer expense. Certainly, this Court has consistently recognized and affirmed the Attorney General's assertion of common law and constitutionally derived authority to carry out the important functions of the office on behalf of the people of this state. *See State v. Lead Paint Industries Association, Inc.*, 951 A.2d 428, 471, 473 (R.I. 2008) ("[T]he Rhode Island constitution recognizes the Office of the Attorney General and provides for its continued existence with all the powers inherent at common law; it also provides that the General Assembly may imbue the Attorney General with powers in addition to those common law powers. * * * In the course of exercising those powers, the Attorney General is vested with broad discretion."); *McKenna v. Williams*, 874 A.2d 217, 223 n.4 (R.I. 2005) ("We cannot presently conceive of any circumstances when it would be the role of the Superior Court or this Court to question [the Attorney General's] decision to represent or decline to represent a state official who is sued in connection with his or her duties."); *Mottola v. Cirello*, 789 A.2d 421, 424 (R.I. 2002) ("The Attorney General of the State of Rhode Island holds a constitutional office with specific and significant responsibilities to the people of Rhode Island.").

Historically, the state and its subdivisions had enjoyed immunity from suit since the dawn of the Republic. "The doctrine of governmental tort immunity was imported to the United States in the early part of the 19th century [and served] to deny tort recovery against state and municipal governments." *Calhoun v. City of Providence*, 120 R.I. 619, 626, 390 A.2d 350, 353

(1978). This Court recognized the doctrine as applied to municipal corporations in *Wixon v. City of Newport*, 13 R.I. 454 (1881). Time marched on, however; and, on February 9, 1970, this Court joined a growing number of jurisdictions and announced the demise of immunity for cities and towns in *Becker v. Beaudoin*, 106 R.I. 562, 261 A.2d 896 (1970). However, we granted a brief stay of execution until June 30, 1970, in order to afford the General Assembly an opportunity to enact legislation "limiting or regulating the prosecution of such claims as arise after said June 30, 1970." *Becker*, 160 R.I. at 572, 261 A.2d at 901. The Legislature responded, and the Governmental Tort Liability Act was conceived. Although in *Becker* we specifically declared that our decision "does not in any manner abolish or limit the sovereign immunity that inheres in the state itself[,]" the new legislation provided otherwise. *Id.* at 572, 261 A.2d at 901-02. The Governmental Tort Liability Act declared that the state and any political subdivisions were liable in all actions of tort, subject to statutory limitations on damages.

Over the years, this Court has had occasion to pass upon, and indeed limit, the extent of the state's waiver of sovereign immunity, including the public duty doctrine and its judicially created exceptions. This Court refused to "attribute to the Legislature the intent to wipe away all barriers to state liability and thereby radically depart from established conceptions of state tort responsibility without a clear statement regarding such a change." *Calhoun*, 120 R.I. at 629, 390 A.2d at 355; *see, e.g.*, *Knudsen v. Hall*, 490 A.2d 976, 978 (R.I. 1985) (holding that state was not liable in the absence of a special duty owed to plaintiffs by the state); *Andrade v. State*, 448 A.2d 1293, 1295 (R.I. 1982) (concluding that prejudgment interest was not available in negligence action against state); *Ryan v. State, Department of Transportation*, 420 A.2d 841, 843 (R.I. 1980) (Court recognized public duty doctrine). In *Catone v. Medberry*, 555 A.2d 328 (R.I. 1989), we recognized both the need to immunize government officials from the threat of litigation for

effective governing or for the performance of an activity inherently sovereign in nature, as distinct from a personal-injury claim arising out of the negligent operation of a motor vehicle or other tortious behavior. *Catone*, 555 A.2d at 333.

However, we are aware of only a single occasion when the discretion exercised by the Attorney General in the defense of the state and its agent against claims brought pursuant to the Governmental Tort Liability Act has been challenged.[8] In *Mottola*, cited *supra*, this Court was called upon to address, *inter alia*, a *sua sponte* order by a justice of the Superior Court that directed defense counsel, retained in accordance with a liability insurance policy in the name of the state, to withdraw his appearance in the action and further ordered the Attorney General to enter his appearance on behalf of the state. *Mottola*, 789 A.2d at 422. We vacated the order and reiterated that "the Attorney General is independent from other branches of government, including the judiciary." *Id.* at 424 (citing *In re House of Representatives (Special Prosecutor)*, 575 A.2d 176, 179 (R.I. 1990)). In *Mottola*, we also had occasion to address the role of the Attorney General in the context of the Governmental Tort Liability Act, and declared that, in deciding whether to undertake a defense of the employee, the Attorney General acts within the exclusive exercise of his or her statutory authority. *Id.* at 424-25. We held that "[i]t is not the province of this Court, or the Superior Court, to dictate how the Attorney General elects to carry out the statutory functions of his office." *Id.* at 425. We do not retreat from that holding in the case before us. However, although the historical powers of the Attorney General are of more than passing interest, we are satisfied that the express language of the Governmental Tort Liability Act controls the resolution of the issues in this appeal.

---

[8] In fact, it was disclosed by the state at oral argument that this is the only instance in which the Attorney General has declined to represent a state employee in an action in accordance with § 9-31-9.

Pursuant to § 9-31-9, the Attorney General is vested with the authority to refuse to defend an action on behalf of a state employee if the Attorney General determines that (1) the state employee's conduct was not within the scope of employment; or (2) the state employee engaged in willful misconduct or actual malice. In the case at bar, the Attorney General declined to provide Trooper Taylor a legal defense in his individual capacity on the grounds that Trooper Taylor's assault on Monsanto was intentional and was not within the scope of his employment as a Rhode Island State Trooper. The Attorney General based his decision on the fact that Trooper Taylor was indicted by a grand jury and pled nolo contendere to misdemeanor assault upon Monsanto. Moreover, the record includes a video recording that captured Trooper Taylor's assault upon Monsanto. We are of the opinion that the information before the Attorney General supports the decision that Trooper Taylor's conduct fell outside the scope of his employment as a Rhode Island State Trooper and that a jury could conclude that he acted willfully.

It is important to note that the state, citing this Court's decision in *Mottola*, 789 A.2d at 425, submits that the decision of the Attorney General to refuse to defend a state employee whose conduct is deemed to fall within one of the disqualifying factors set forth in § 9-31-9 is not reviewable. We reject this contention. Judicial review of the Attorney General's discretionary decision is available to an employee who has been denied the benefits of § 9-31-8. We are convinced that the General Assembly enacted § 9-31-8 with the intention to protect state employees against tort claims that may arise out of the conduct that occurred within the scope of their employment. *See State v. Medical Malpractice Joint Underwriting Association*, 941 A.2d 219, 221 (R.I. 2008). Although the protection for a state employee is not limitless and is indeed cabined by § 9-31-9, a state employee, acting within the scope of his or her employment, should be able to rely on the protection of the Governmental Tort Liability Act and seek judicial review

of a decision that denies such protection. Nonetheless, the question of when and under what specific circumstances that review may be undertaken is not before this Court, and we need not speculate at this time.

Lastly, we address RITA's somewhat shifting position in this appeal that began with a demand for a legal defense and indemnification of Trooper Taylor, including indemnification for punitive damages, and has moved toward a request for indemnification or the payment of private counsel. The RITA argues in its brief that "[t]he right to decide whether [the Attorney General] will defend an employee does not give the Attorney General the power to decide whether an employee is entitled to any financial support from the state * * *." The RITA directs this Court to § 9-31-12, which is the statutory authority that permits "[t]he state [to] reserve[] the right to determine whether or not it will indemnify any employees defended pursuant to §§ 9-31-8 – 9-31-11, if a judgment is rendered against the employee." Section 9-31-12(a). The RITA argues, however, that § 9-31-12(b) tasks the judiciary with the "final decision" on whether the state will indemnify a state employee, not the Attorney General. These arguments are misplaced; § 9-31-12 applies when a determination has been made by the Attorney General that the conduct giving rise to the suit was within his or her employment and a state employee is thereafter defended in accordance with § 9-31-8. *See Medical Malpractice Joint Underwriting Association*, 941 A.2d at 221 ("In 1995, § 9-31-12 * * * was amended * * * in order to provide increased liability protection for state employees, for tort claims based on conduct that occurred within the scope of their employment * * *."); *Mottola*, 789 A.2d at 423-24 (holding that the language of § 9-31-12(b) is unambiguous and requires that the employee's conduct fall within the scope of employment and was not fraudulent, malicious, or the result of willful misconduct). Section 9-31-12(b) does not apply to cases in which the Attorney General has refused to provide

a defense based on one of the enumerated disqualifying factors under § 9-31-9. Thus, as we discussed *supra*, we are of the opinion that the Governmental Tort Liability Act is an orderly statutory scheme enacted by the General Assembly that vests the Attorney General with the authority to determine whether the state employee qualifies for defense and indemnification. It does not interfere with the Governor's power to enter into collective bargaining agreements, nor does it encroach upon the General Assembly's authority to determine the financial terms of state employees.

The RITA further argues that § 9-31-11, which becomes operable when the Attorney General has a conflict of interest, serves to limit the Attorney General's authority to determine indemnification to *his or her* office, and does not afford the Attorney General the authority to dictate the financial obligations of the state as a whole.[9] The RITA directs this Court to the holding in *Mottola*, a case in which we held that § 9-31-11 requires that the state pay for reasonable attorney's fees when the Attorney General "determines that it is not in the best interest of the state or the employee to undertake the defense * * *." *Mottola*, 789 A.2d at 424-25. The holding in *Mottola* is not relevant to the facts of this case. The Attorney General in the instant case did not find there to be a conflict of interest that prevented him from representing Trooper Taylor, but rather he found that Trooper Taylor was disqualified from defense and

---

[9] General Laws 1956 § 9-31-11, titled "Conflict—Payment of counsel fees by state," provides:

> "In the event there is a conflict of interest or the attorney general determines it is not in the best interest of the state or the state employee or former state employee to represent him or her, the state shall pay for reasonable counsel fees; provided, however, that the attorney general shall consult in advance with the prospective counsel to establish the parameters within which the state will be liable for attorneys' fees; and provided, further, that their reasonableness shall ultimately be reviewed and approved by the court before paid."

indemnification provided by the state.  Accordingly, we affirm Declaration C of the judgment, and we vacate Declarations G and H as superfluous to the issues in this case.

## Conclusion

For the reasons set forth herein, we affirm the first six declarations and vacate the remaining two declarations in the judgment of the Superior Court.  The papers may be returned to the Superior Court.

STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

## SUPREME COURT – CLERK'S OFFICE

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | State of Rhode Island, by and through Attorney General Peter Kilmartin v. Rhode Island Troopers Association. |
| **Case Number** | No. 2017-330-Appeal. (PC 17-918) |
| **Date Opinion Filed** | June 27, 2018 |
| **Justices** | Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ. |
| **Written By** | Associate Justice Maureen McKenna Goldberg |
| **Source of Appeal** | Providence County Superior Court |
| **Judicial Officer From Lower Court** | Associate Justice Netti C. Vogel |
| **Attorney(s) on Appeal** | For Plaintiff: Department of Attorney General: Rebecca T. Partington Michael W. Field Chrisanne Wyrzykowski For Defendant: Michael B. Forte, Jr., Esq. |

SU-CMS-02A (revised June 2016)